MATILDA. The (UNITED STATES v.). See Case No. 15,741.

---

## Case No. 9,281.

### The MATILDA A. LEWIS.

[5 Blatchf. 520.][1]

Circuit Court, S. D. New York. Nov. 19, 1867.

OFFICERS—SECRETARY OF WAR — ORDER PROHIBITING EXPORTATION—CARRIERS—SHIPPING—BILL OF LADING — FAILURE TO DELIVER — SEIZURE — LIABILITY.

1. The order of the secretary of war, of the 13th of May, 1863, directing the commanders of departments to prohibit the purchase and sale of horses, mules and live stock intended for exportation, and to cause the value of the same to be appraised, and the articles to be reported to the quartermaster-general, and to be taken and appropriated to the use of the government, and the order of the secretary of the treasury, of the 19th of May, 1863, to the collectors of customs, directing those officers to refuse clearances for the exportation of horses, mules and live stock, and to cause the detention of all animals attempted to be exported in violation of such orders, and to report the detention to the commander of the nearest military district, for his action, in pursuance of such order of the secretary of war, were invalid, as not being authorized by any act of congress.

2. Under said orders, live fowls were not embraced within the term "live stock."

3. Where live fowls were put on board of a vessel, at New York, for exportation to Havana, and three bills of lading were signed for them, one of which was retained by the master of the

vessel, and two of which were delivered to the consignor, and forwarded to the consignee, who made an advance thereon, and afterwards the fowls were seized by the collector of customs, under said orders, and removed from the vessel, and the bill of lading in the hands of the master was cancelled by the consignor: held, in action by the consignee against the vessel, on the two bills of lading, to recover the amount of such advance, because of the non-delivery of the fowls as Havana, that the vessel was liable.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by Philip E. Desvernine and Anthony Desvernine against the barque Matilda A. Lewis, to recover the amount of an advance made by them to one C. Glass, on the bills of lading of a shipment of seventy-four coops of live fowls, made by Glass, by that vessel, from New York to Havana, on the 6th of October, 1863. The district court dismissed the libel, and the libellants appealed to this court.

Robert D. Benedict, for libellants.
Charles Donohue, for claimants.

NELSON, Circuit Justice. The main defence set up, in this case, is, that the shipment was illegal, and the contract arising out of the bills of lading void. It appears, from the proofs, that the secretary of war issued an order, on the 13th of May, 1863, to the several commanders of departments, reciting, that information had been received at the department, that sundry persons were purchasing horses and mules, within the United States, for exportation, contrary to the executive order of November, 1862, and, to the end that, during the war, the military resources of the government should not be withdrawn from the country, directing the commanders of departments to prohibit the purchase and sale of horses, mules and live stock intended for exportation, and to cause the value of the same to be appraised, and the articles to be reported to the quartermaster-general, and to be taken and appropriated to the use of the government. The claims against the government were to be adjusted by the quartermaster-general. On the 19th of the same month, the secretary of the treasury issued an order to the collectors of customs, referring to the above orders, and directing those officers to refuse clearances for the exportation of horses, mules and live stock, and to cause the detention of all animals attempted to be exported in violation of the orders, and to report the detention to the commander of the nearest military district, for his action, in pursuance of the order of the secretary of war. The fowls in question were seized by the collector of the port of New York, under the orders above cited. The goods had been put on board, bills of lading had been given, and the vessel had cleared, before the seizure of the vessel and the fowls. Two of

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

the bills of lading had also been forwarded to the consignees of the goods, and the advance in question made by the agent of the consignees. After the seizure, the fowls were taken from the vessel, by an arrangement with the consignor and the custom-house officers, and the vessel was allowed to proceed on her voyage. The consignor cancelled the bill of lading in the hands of the master. The other two bills of lading had already been sent to the consignees, with advices of the advance made by their agent.

It is quite clear, that the defence to the claim for the advance on the bills of lading, and for the non-delivery of the goods at the port of destination, must rest on the validity of these orders. For, I agree that, if they can be upheld, and if the fowls are embraced within the term "live stock," the contract of shipment was illegal, and cannot be the foundation of a suit. Abb. Shipp. pt. 4, c. 13; and see Evans v. Hutton, 6 Jur. pt. 1, p. 1042. There is great difficulty, however, in upholding them. No act of congress has been referred to, nor have I found any, authorizing them. They amount, on the most mitigated construction that can be given to them, to an entire prohibition of the commerce of the country in the articles of horses, mules, cattle and sheep, all of which are confessedly within the scope of the orders—a commerce made lawful by our navigation laws and by treaty stipulations. This trade is absolutely suspended indefinitely; and, not only this, but the government, in the mean time, is made the general purchaser of all this description of property destined to a foreign market.

Moreover, if the construction given to the orders by the custom-house officers can be maintained, then I do not see but that all the domestic animals of the United States fell within the prohibition, and were taken out of the foreign commerce of the country. I am satisfied, however, that, upon a true and obvious interpretation, the article of fowls was not embraced within the scope of the orders, and that the custom-house officers misconstrued them. Indeed, it is due to the secretary to say that, on his attention being called to the subject, he disavowed the construction.

The cancellation of one of the bills of lading cannot protect the ship. The master should have had all the parts of the bills of lading delivered back to him or cancelled. The case is an unfortunate one, and hardship attends the decision, in either way in which the case may be decided; but I can only follow out the law of the case. The decree below must be reversed, and a decree be entered for the libellants.