(No. 6948.   March 20, 1942)

WALTER RICHARD SMYTHE, Respondent, v. W. G. PHOENIX, Appellant.

(123 Pac. (2d) 1010)

Frank M. Rettig, for Appellant.

Bert H. Miller, Attorney General, and Thos. M. Robertson, Jr., and Paul B. Ennis, Assistant Attorneys General for the Industrial Accident Board.

GIVENS, C.J.—W. G. Phoenix, employer and appellant herein, his wife, and through a corporation, the stock thereof held exclusively by them, own approximately 800 acres of land in Jerome, Cassia, Gooding, and Power Counties, all adjoining, all of which is farmed by tenants on a share crop basis; in addition, he manages for absentee owners approximately 3500 acres of farm lands situated in the same counties. Practically all of appellant's time is taken up in managing these farms.

Appellant, having been unable to satisfactorily sell his hay and grain crops, in 1932 started buying lambs in the fall of the year, fattening them for market, and selling them, on a three to four months turnover. During October appellant, as his own individual operation, buys the lambs and places them, under some undisclosed arrangement with his tenants, on the family farms, where for about 60 days they eat beet tops, fall pasture and roughage. During this time hay and grain are hauled from the farms to a nine-acre feed lot which appellant maintains at Burley, Cassia County. The site of the feed lot was selected because of its proximity to the stockyards and a

sugar factory, pulp and syrup from which are fed the lambs, and because of the ample water supply there available. From October to March between 3000 and 4500 lambs and between 80 and 90 feeder hogs are fattened by appellant on the farms and at the feed lot and sold when marketably fat. From two to six men are employed at the feed lot during the time the lambs are there.

Respondent was employed by appellant on the farms and at the feed lot from October, 1939, to March, 1940, operating a hay mill, mixing feed, keeping the mill in repair, and assisting in feeding the lambs. The hay chopped in the mill was mixed with grain and syrup and fed to the lambs. None of the hay ground was sold, nor was any of it fed to any livestock except that of appellant, nor does he perform any service or feed for anyone else. Appellant's share of the hay and grain raised on his farms furnished, in 1940, 75% of the hay and 80% of the grain needed to feed the lambs. Appellant was at the feed lot about once a week.

On March 16, 1940, respondent filed a claim for benefits under the unemployment compensation law. It was determined by an investigator that his services while employed by appellant on the feed lot constituted agricultural labor. Respondent asked for a review by an examiner, who held it (work at the feed lot) was not agricultural labor and did not come within the excepted provisions of the compensation law. Appellant filed a claim for review with the Industrial Accident Board, which held the work done at the feed lot was not agircultural and that such work was covered employment, from which order the present appeal is taken. There is no contention the feeding and work done on the farms, away from the feed lot, was not agricultural.

The above statement of the facts is supported by competent evidence and carried into the findings of fact.

Section 19 (g-2 [4] ) of chapter 12, Third Extraordinary Session of 1935, section 19 (g-6 [D] ) of Chapter 187 of the 1937 Session Laws, and section 18-5 (f) of Chapter 239 of the 1939 Session Laws provide "agricultural labor" shall be excepted from the operation of the unemployment

compensation statute. It will be noted that this exemption was amended in 1941 to read as follows:

"(f)  Services performed in the employ of an individual owner or tenant operating a farm in connection with the cultivation of soil, the production and harvesting of crops or the raising, feeding or managing of livestock, bees or poultry, or in connection with the processing, packing or marketing of the produce of such farm where such processing, packing or marketing is an incident to the ordinary farming operations of such individual owner or tenant; provided, however, that nothing in this subsection shall be construed to exclude from the term 'covered employment' services performed in the employ of any person or persons who operate a farm or farms only incidental to a principal occupation or occupations which would otherwise be termed covered employment within the meaning of this Act." (Ch. 182, '41 S. L.)

We merely decide this case under the statute as it existed at the time the facts arose.

This court in the past has had occasion to consider the term "agricultural pursuits" as defined in the workmen's compensation law[1] and its application in connection with workmen's compensation, a cognate sphere.

In *Cook v. Massey*, 38 Ida. 264, 220 Pac. 1088, 35 A. L. R. 200, the court held that because of the historical background, legislative intention, and interpretation indicated in other statutes, and that grain is not a completed farm or agricultural product until threshed, "agricultural pursuit," a broader term than "agricultural labor," included commercial threshing. In *Gloubitz v. Smeed Brothers*, 53 Ida. 7, 21 Pac. (2d) 78, it held that it did not include the commercial delivery of horses because not work carried on by the particular employer, a sales stockyard operator, as an agricultural pursuit on open ranges or in inclosed fields. In *Dorrell v. Norida Land & Timber Co.*, 53 Ida. 793, 27 Pac. (2d) 960, it was held that it did

---

[1] "43-904. Employments not covered—Election of coverage.— None of the provisions of this act shall apply to:

1. Agricultural pursuits. Agricultural pursuits, as used herein, shall include the caretaking and handling of livestock on enclosed lands and public ranges.

*  *  *  "

not cover sporadic activities in connection with hauling grain where deceased was regularly employed as a watchman of a sawmill. *Mundell v. Swedlund,* 59 Ida 29, 80 Pac. (2d) 13, held it did not include grinding hay commercially with a hammer mill because hay is a completed farm or agricultural product and hay grinding is not an essential nor usual farm or agricultural activity. In *Big Wood Canal Co. v. Unemployment Compensation Division,* 61 Ida. 247, 100 Pac. (2d) 49, the court held that "agricultural labor" included work connected with the delivery of water to farms by a co-operative irrigation district, irrigation being essential and necessary to agriculture and farming in arid southern Idaho.

Cases which have held in line with the thought that the work engaged in by appellant here was of an agricultural nature bringing it within the exemption clause of the unemployment statute are: *Holmes v. Travelers Ins. Co.* (Tex.) 148 S. W. (2d) 270, in which a dairy farm employe feeding cows was held to be engaged in an agricultural pursuit. Other cases holding employes on dairy farms were engaged in agriculture are *Hardy v. Gapen,* (Pa.) 14 Atl. (2d) 892; *Application of Butler,* 16 N. Y. S. (2d) 965; *Keeney v. Beasman,* 169 Md. 582, 182 Atl. 566. Hauling garbage to feed pigs was held farm labor in *Halletz v. Wiseman,* 183 N. Y. S. 112. Feeding and caring for poultry was held to be farm labor in *Bennett v. Stoneleigh Farms,* 4 N. Y. S. (2d) 255. An employee on a demonstration farm operated by a creamery on which turkeys, hogs, and cattle were raised was held to be a farm laborer in *Hebranson v. Fairmont Creamery,* 187 Minn. 260, 245 N. W. 138.

In *National Labor Relations Board v. Tovrea Packing Co.,* 111 Fed. (2d) 626, the court considered that an employe of a packing company in feeding and caring for stock in pens immediately adjacent to the packing plant was not an agricultural laborer, but, by way of distinction, and though perhaps dicta therein, applied herein the reasoning employed in arriving at the decision, so far as pertinent, sustains the appellant's position, the court saying:

"We are not called upon to determine the status of the

employees on the ranches but we do not hesitate to say that while the grinding of the feed and the actual feeding on the ranches may be quite similar to such work done adjacent to the packing plant, divergent circumstances may well throw the employees of the ranches without and those of the packing plant within the terms of the Act.

Labor on a cattle ranch is as agricultural in nature as labor on a wheat growing farm. 3 Corpus Juris Secundum, Agriculture, sec. 1, pp. 365, 366. But here we do not have stock raising or feeding as an incident to a stock ranch, nor do we have stock feeding or conditioning as a separate activity, but we do have stock ready for conditioning and fattening confined in relatively small corrals and fed intensively for short spaces of time as an incident to a meat slaughtering and packing industrial enterprise. The elements of agricultural labor as distinguished from non-agricultural labor, seems entirely lacking. See *North Whittier Heights Citrus Ass'n v. National Labor Relations Board,* 9 Cir., 109 F. 2d 76 (Jan. 12, 1940), and cited authority. We see no effective relation between the packing plant with its adjacent mill and pens and Respondent's ranches. We hold that none of the laborers therein are agricultural laborers and that all are within the purview of the Act."

The thought therein contained clearly supports appellant's position herein, because herein appellant was engaged in no other business, such as packing, to which his operations in connection with the feed lot or his farms was merely an adjunct or incidental. The interpretative decision in 4 U. C. I. S., No. 8, August, 1941, p. 88, is likewise and for the same reason clearly distinguishable. Other authorities cited by respondent covering greenhouses and other activities are not deemed sufficiently in point to require discussion thereof.

*Christgau v. Woodlawn Cemetery Association,* 208 Minn. 263, 293 N. W. 619, thus defined agricultural labor:

"The federal statute [the Social Security Act] as originally enacted, and the state statutes which copied it, do not define the term 'agricultural labor.' The term 'agricultural labor' was not by any means a new one. The workmen's compensation acts of various states contained

provisions excluding 'agricultural employments' and 'farm labor.' These terms have been used as practically synonymous. The definition in Webster's International Dictionary that 'agriculture is the art or science of cultivating the ground, especially in fields or in large quantities, including the preservation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding and management of live stock; tillage; husbandry; farming' is generally accepted. The terms include all farm work and work incidental thereto. 1 Schneider Workmen's Compensation Law, 2d Ed., sec. 31."

See also 7 A. L. R. 1296, 13 A. L. R. 955, 43 A. L. R. 954, 107 A. L. R. 977.

As pointed out in the oral argument, it is somewhat difficult to, by general rule or definition, completely and adequately cover prospectively and in detail what may or may not be agricultural pursuits or agricultural labor, and it is rather necessary, as in workmen's compensation cases, to decide each case upon the particular facts involved and by applying pertinent general rules decide the individual case and place it in one category or the other. *Dutson v. Idaho Power Co.*, 57 Ida. 386, at 393, 65 Pac. (2d) 720.

In *Mundell v. Swedlund, supra,* the court emphasized, citing with approval *Dorrell v. Norida Land & Timber Co., supra,* that "it is the whole character of the employment, rather than merely the pending task or the place of performance, which must be looked to in order to determine whether the employee is engaged in an agricultural pursuit [or labor]." So far as appellant and respondent were concerned, the "whole character" of respondent's employment was feeding, including activities essential thereto, livestock for market. The fact appellant himself did not breed and raise the lambs would not detract from the feeding and fattening as being agricultural. Respondent herein was engaged in an agricultural pursuit upon the nine acres constituting the appellant's feed lot as much as if the nine acres had been a part of any one of appellant's farms. All of the work performed for him by respondent was incidental to and a necessary part of fattening sheep for market, appellant's sole pur-

pose as disclosed by the record, and thus exactly similar to any other livestock employer. Until they were properly fattened the lambs were not a completed farm or range product at least for slaughtering purposes.

As against this thought respondent urges *Rose Packard Shyvers v. Security-First National Bank,* 108 Fed. (2d) 611, 126 A. L. R. 674. This case considered the scope of 11 U. S. C. A. sec. 203(r), defining the word farmer. In the first place, the statute under consideration herein does not except employment for a "farmer" and nowhere uses the word; and, in the second place, the definitions in the case encompass appellant herein. The court quoted with approval from *First National Bank & Trust Co. v. Beach,* 301 U. S. 435, 57 S. Ct. 801, 81 L. Ed. 1206, this:

" 'The critical fact is that the debtor worked an acreage large enough to count, that he did not work at anything else, and that he gave to this work, whether profitable or unprofitable, "the major portion of his time.' "

"The court then went on to say that if Beach was a farmer because he cultivated a substantial farm, he did not step into another business by leasing other acres of the tract to tenants who were to use what they hired for grazing and other farming operations."

So here, the nine acres were directly under the ownership, control, and were operated solely by appellant, true, with hired help. If there had been no hired help, no question of unemployment compensation could have arisen. The statute contemplates that the "agricultural labor" will be for some one other than oneself, hence the *labor performed* is the criterion. We are not unmindful of the facetious quip that a farmer is a man who lives on the land and farms the farm, while an agriculturalist is a man who lives in the city and farms the farmer. Though there be some element of substance in such jocularity, we need make no such invidious or hypertechnical distinction herein, because appellant was actually and entirely devoting his time and attention to the activities of his livestock business as such, and not as an appendage to any other commercial enterprise.

The feeding of the livestock herein on the feed lot was certainly sufficiently integral to the supervision and

operation of the farms, and vice versa, whether by tenant or hired help, to come within the generally and commonly understood term of agricultural labor.

Our conclusion therefore is that under our previous holdings and the reasoning of the above cases the activities engaged in by appellant on the feed lot were agricultural labor, and the order of the board is therefore reversed and the cause remanded with instructions to deny respondent's claim for unemployment compensation for the services rendered by him to appellant in connection with appellant's feeding of livestock at the feed lot.

Jurisdictional questions are reserved as In re refund of contributions of P. G. Batt under the Unemployment Compensation Law, *P. G. Batt*, Appellant, *v. Unemployment Division of Industrial Accident Board of Idaho*, Respondent, 63 Idaho 572, 123 Pac. (2d) 1004.

Budge, Morgan, Holden, and Ailshie, JJ., concur.