[S. F. No. 9123.   In Bank.—November 19, 1919.]

## R. W. KROBITZSCH, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents

[1] Workmen's Compensation Act—Employee at Time of Injury—Evidence—Finding of Commission Supported.—On *certiorari* to review the proceedings of the Industrial Accident Commission in awarding a death benefit, the finding that the deceased was at the time of his death in the employ of the petitioner cannot be disturbed, where the contention that the employment had ceased seven days prior to the injury was based upon a letter written in reply to a request for a raise in salary which did not have the effect of terminating the employment, but gave the deceased the option of leaving or continuing the employment at the existing salary.

[2] Id.—Injury in Course of Employment—Finding—Conflict of Evidence.—The finding of the commission on conflicting evidence that the injury to the deceased arose out of and in the course of such employment, was proximately caused thereby, and occurred

while the employee was performing services growing out of and incidental to the same, must be upheld.

[3] Id.—Labor Employed in Propagation of Trout for Domestic Purposes—Right to Compensation.—The propagation of trout for domestic purposes does not comprise farm labor or stock-raising within the meaning of those terms as used in subdivision a of section 8 of the Workmen's Compensation, Insurance and Safety Act of 1917, which excludes from the operation of the act any employee engaged in household domestic service, farm, dairy, agricultural, viticultural or horticultural labor, in stock' or poultry raising.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission. Affirmed.

The facts are stated in the opinion of the court.

Jacobs & Oliver for Petitioner.

A. E. Graupner for Respondents.

LAWLOR, J.—*Certiorari* to review the proceedings of the Industrial Accident Commission in awarding a death benefit in the sum of $2,807 and one hundred dollars for funeral expenses to the widow and children of Charles Edward Starkey, deceased, and against the petitioner.

The commission found: "That Charles Edward Starkey, hereinafter called the employee, was injured on the 8th day of October, 1918, in Santa Cruz County, California, while in the employment of defendant, R. W. Krobitzsch, hereinafter called the employer, as an employee on the 'Santa Cruz Trout Farm' at Olympia, in said county, and that said injury proximately caused the death of the employee on the said day.

"2. That said injury arose out of and in the course of such employment, was proximately caused thereby and occurred while the employee was performing service growing out of and incidental to the same, and happened in the following manner: While engaged in clearing weeds, brush, ferns and other natural growth from the neighborhood of the flume on said 'Santa Cruz Farm' and carting it away in a small wagon for the purpose of burning same, a part of the load on said wagon slipped off, carrying the em-

ployee with it, and causing a pitchfork to fall on the employee, wounding him and causing his death.

"3. That at the time of said injury the employee was not engaged in farm labor, stock-raising or any of the occupations or employments excluded by section 8 of the Workmen's Compensation. Insurance and Safety Act of 1917 (Stats. 1917, p. 835), from the provisions of said act, and the employee and the employer were subject to the compensation provisions of said act and to the jurisdiction of this commission."

1. Petitioner contends that the award of the commission should be annulled on the ground that "the decision and award are contrary to the evidence relating to the employment of said Charles Edward Starkey, in that his term of employment had ceased seven days prior to the injury," that is to say, that deceased was not the employee of the petitioner at the time of his injury and death. This contention is based on the fact that deceased had become dissatisfied with his pay, which was eighty dollars a month, and had asked that his salary be raised to one hundred dollars, and that in reply to this request the petitioner, on September 27, 1918, wrote the following letter:

"Mr. Chas. E. Starkey,

"C/o Santa Cruz Trout Farm,

"Olympia, Calif.

"Dear Sir: In thinking the matter over regarding the advance in salary that you ask for, I find that I will not be able to meet with your views.

"Rather than have any argument over same, and feeling that perhaps you are dissatisfied, I would ask you to find a new position after October 1st, 1918.

"If you will feed the fish for me until I send a man down, I will allow you in return for this work and without any further consideration, to live in the house you now occupy free of rent until you locate yourself.

"Before leaving the place advise me three or four days in advance so that I can send a man down to take care of the fish.

"Thanking you for what you have done for the Santa Cruz Trout Farm, beg to remain,

"Yours very truly,"

[1] Petitioner contends that this letter terminated the employment of the deceased. It seems to us that this letter did not have the effect of terminating the employment, but that it gave Starkey the option of leaving or of accepting the employment and continuing therein at the rate of $80 a month. · This conclusion is sustained by the testimony of the petitioner himself, wherein he said: "I expected Mr. Starkey to be up—that is what I really expected. I thought when he received this letter he would come up. I expected him in almost any time. *I thought he would either do one thing or the other* because it had got to a point where one thing or the other had to be done." (Italics ours.) Upon this state of the evidence the finding of the commission that the deceased was at the time of his death in the employ of the petitioner cannot be disturbed.

2. It is contended that the award should be annulled "on the further ground that said decision and award are contrary to the evidence relating to the issue as to whether the accident arose out of or in the course of the employment of said Charles Edward Starkey by the petitioner." As we have already seen, the commission found on this point that the deceased was killed while engaged in clearing brush and ferns and other natural growth from the neighborhood of the flume and carting it away in a small wagon for the purpose of burning it. The petitioner testified that the sole duties of the deceased were to feed the fish, to clean the ponds where the fish were kept, and to keep them supplied with fresh water and prepare the fish for market as orders came in. And that he had never given instructions to Starkey to clear away any brush or ferns or the like from the vicinity of the flume, and that such was not a part of the work for which he was employed. Petitioner further testified that he made a tour of inspection throughout the entire length of the flume after the fatal accident and that there was no evidence that any clearing had been done near the flume, but that at one place across the road from the flume he found a patch about fifteen by eighteen feet which had been cleared of brush, and that there was a pile of fern-brakes in this clearing, and that Mrs. Starkey had pointed out this place as the one where her husband was killed. He also testified that he found a quantity of these fern-brakes on the floor of the stable where the deceased

kept his cow, the claim being made that the deceased was at the time of his death engaged in hauling fern-brakes to be used as bedding for his cow and, therefore, that the injury did not arise out of and was not received in the course of his employment. Witness McGuire also testified that he went up to the barn and "could see the remains of fern-brakes used as bedding for the cow." Witness Miller, the former manager of the trout farm, when asked what advantage, if any, there would be in clearing ferns in October along the flume, answered, "None whatever."

However, Mrs. Gertrude Starkey and William E. O. Starkey, the fourteen year old son of deceased, both testified that it was the custom on the trout farm to clear away the brush from the vicinity of the flume every fall; that this was done to minimize the fire risk; that this work of clearing away the fern and brush had been done in the fall of the years 1915, 1916 and 1917, and that the deceased was engaged in that work at the time of his death.

[2] In view of this conflict in the evidence the finding of the commission that the injury to the deceased "arose out of and in the course of such employment, was proximately caused thereby and occurred while the employee was performing services growing out of and incidental to the same," must be upheld.

3. Petitioner contends, also, that the award "should be annulled upon the ground that said Industrial Accident Commission, in rendering a decision and entering an award against the petitioner, acted without and in excess of its authority, in that the business conducted by the petitioner, E. W. Krobitzsch, to wit, the *propagation of trout* for domestic purposes, comprises *farm labor and stock-raising,* and that an employee of such business is excluded from the benefits of the 'Workmen's Compensation, Insurance and Safety Act of 1917,' by virtue of subdivision 'a' of section 8 of said, act." The said subdivision reads in part: " : . . excluding any employee engaged in household domestic service, farm, dairy, agricultural, viticultural or horticultural labor, in stock of poultry raising, . . ."

[3] We are of the opinion that the petitioner is not entitled to exemption under the provisions of this act. It seems clear beyond question that the legislature did not intend to use in a general sense the terms employed in

describing the excluded classes. If that had been the intention of the legislature it would not have used the terms "farm, dairy, agricultural, viticultural or horticultural labor," for "farm labor" would, in the broad sense, include labor engaged in dairying, agriculture, horticulture, stock-raising and poultry-raising and anything which can be defined as cultivation of the soil (19 Cyc. 456; 2 C. J. 988). The very wording of the clause of the act upon which petitioner relies shows that the legislature was giving a restricted meaning to the term employed, and was segregating into certain definite and exclusive classes all kinds of "labor" which in the broad and unrestricted sense would come under the head of farming. "Farm labor" must, we think, be taken in its ordinarily accepted meaning as labor engaged in the production of hay, grain, vegetables and the like by the tillage of the soil. To give the term a broader meaning would be to restrict the terms "dairy, agricultural, viticultural or horticultural labor," as used in the statute, for by the employment of the words used it is clear that the legislature did not intend to include dairy farming, fruit farming, grape growing, or, we may add, "fish farming," within the term "farm," or it would not have employed terms of narrowing import.

Likewise, we must interpret the term "stock-raising" in the sense in which it is commonly employed, namely, the raising of those domestic animals usually classed as "livestock," and commonly raised on farms or ranches, such as horses, mules, cattle, sheep, goats, hogs and the like. Petitioner has gone to great length in quoting from dictionaries and encyclopedias to show that the term "stock-raising," in its broadest sense includes the propagation of domestic trout. It is clear that if the term is to be taken in its generic sense it will include the propagation and rearing of all domestic animals, which, it may be conceded here, includes domestic trout. But it is equally clear that the legislature did not use the term in its generic sense so as to include the raising of all domestic animals, otherwise, "poultry raising" would not have been specially mentioned.

The business conducted by the employer herein was one prohibited by law (Pen. Code, sec. 632), prior to the adoption of the Statute of 1911 on the subject of raising trout for domestic purposes (Stats. 1911, p. 378). In the title of that

act the business is thus described: "Persons engaged in the business of propagating and rearing such fish." The license issued by the board of fish and game commissioners under this act is entitled: "Licensed Pond for Culture of Domesticated Trout or Other Fish." The certificate recites "that a holder thereof is the proprietor of a private pond or ponds called ———— and situate in the county of ————, State of California, upon the real property described as follows: ————, is hereby authorized to keep and propagate therein and dispose of as provided by law, trout or other fish."

It will be observed that in this legislation, which was on the statute books at the time of the enactment of the Workmen's Compensation Act of 1917, neither the word "farm" or "stock" is used. Instead thereof, the words used are "pond" and "fish." It seems to us that if the legislature had intended to exclude labor employed in such an enterprise from the operation of the Workmen's Compensation Act it would have in terms so specified.

We do not think, therefore, that such labor is to be included in the terms "stock-raising" or "farm" labor.

It follows that the award must be affirmed, and it is so ordered.

Shaw, J., Olney, J., Wilbur, J., Lennon, J., Melvin, J., and Angellotti, C. J., concurred.