[Civ. No. 10590. Third Dist. July 22, 1963.]

COAST OYSTER COMPANY, Plaintiff and Appellant, v. IRVING H. PERLUSS, as Director of the State Department of Employment, Defendant and Respondent.

494

Anthony J. Kennedy and Kumm, Maxwell, Petersen & Lee for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Walter J. Wiesner, Deputy Attorney General, for Defendant and Respondent.

SCHOTTKY, J.—Coast Oyster Company, a corporation, appeals from a judgment rejecting its claim for a refund of unemployment insurance taxes.

The essential facts were stipulated to by the parties. Briefly they are: Appellant was and is a Washington corporation engaged in the business of raising and selling oysters and oyster products. During the period involved herein, January 1, 1956, through December 31, 1958, appellant was engaged in its business of raising and selling oysters in Humboldt County. It operated oyster beds in Humboldt Bay and maintained two plants, one for fresh packing oysters and one for canning oysters, and offices in Eureka for its California operations.

Appellant's method of operation was as follows: It deposited oyster seed on its oyster beds; performed such tasks as were necessary for the protection of the beds and oysters; harvested the oysters; loaded the oysters on floating equipment owned by it; transported the oysters to its plants; and then opened, cleaned, graded, and packed or canned the oysters. The smaller oysters were fresh packed by appellant in containers with plastic tops. The oysters which were not suitable for fresh packing were cleaned, washed, graded and either sealed in cans which were placed in a retort for cooking or machine sliced, mixed with butter, oyster nectar and milk and certain artificial additives to make oyster stew, which was then placed in cans for cooking in a retort.

After the oysters had been fresh packed or canned, they were sold to two independent wholesale distributors f.o.b. ap-

pellant's warehouse under two trade names: (1) "Willa-point," which is owned by appellant, and (2) "Chicken of the Sea," which is owned by one of the independent wholesale distributors.

Appellant held a fish canner's and processor's license and a wholesale fish dealer's and preserver's license during the period involved herein.

The basic issue presented by this appeal is whether sums paid for any or all of the services rendered to a corporation engaged in the business of raising and selling oysters are to be considered paid for agricultural labor, as that term is used in the Unemployment Insurance Code, and therefore not includable in wages subject to unemployment insurance contributions.

Section 976 (all section references herein are to the Unemployment Insurance Code except as otherwise noted) requires the payment of "[e]mployer contributions" based upon wages paid for "employment." Section 601 provides that employment means "service . . . performed for wages. . . ." Certain services, however, are specified to be excluded services (§ 625 et seq.), i.e., though performed for money they are not considered employment as that term is used in section 976.

The exclusion which is involved herein is that for agricultural labor (hereinafter referred to as the agricultural labor exemption) which is covered in sections 625 through 628. These sections provide as follows:[1]

625. " 'Employment' for the purposes of this part does not include agricultural labor."

626. "Agricultural labor includes all services performed on a farm in the employ of any person:

"(a) In connection with the preparation, care and treatment of farmland, including leveling for agricultural purposes, plowing, disking, and fertilizing the soil.

"(b) In connection with the sowing and planting of any agricultural or horticultural commodity.

"(c) In connection with the care of any agricultural or horticultural commodity. As used in this subdivision 'care' includes, but is not limited to, cultivation, irrigation, weed control, thinning, heating, fumigating, spraying, and dusting.

---

[1]The sections as set forth include all amendments through 1961. No amendments material to the issues herein were adopted since the beginning of the period in question.

"(d) In connection with the harvesting of any agricultural or horticultural commodity. As used in this subdivision 'harvesting' includes, but is not limited to, picking, cutting, threshing, knocking off, field chopping, bunching, baling (including hay baling), field packing, and placing in field containers or in the vehicle in which the commodity will be hauled on the farm or to the place of first processing. By way of illustration, the placing of cotton in picking bags or other containers or vehicles, the field packing of berries and table and shipping grapes, the field packing of lettuce and other vegetables, the sacking of grain and the sewing of such sacks of grain, are included within the term 'harvesting' as used in this subdivision.

"(e) In connection with the assembly and storage of any agricultural or horticultural commodity. As used in this subdivision 'assembly and storage' includes, but is not limited to, loading, roadsiding, banking, stacking, binning, and piling.

"(f) In connection with the raising, feeding and management of livestock, mink, poultry, rabbits and bees, including, but not limited to, herding, housing, hatching, milking, shearing, handling eggs and extracting honey."

627. "Agricultural labor includes all services performed in the employ of the owner or tenant of a farm:

"(a) In connection with the drying, processing, packing, packaging, handling, grading, storing, freezing, transporting to delivery point or point of first processing, and marketing of any agricultural or horticultural commodity the major part of which was produced by such owner or tenant.

"(b) In connection with the operation, management, conservation, improvement or maintenance of such farm and its tools and equipment if the major part of such services are performed on a farm in connection with ordinary farming operations.

"(c) The provisions of subdivisions (a) and (b) are not applicable with respect to services performed in connection with commercial canning or commercial freezing operations or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption, or to manufacturing or commercial operations as distinguished from ordinary farming operations."

628. "As used in sections 626 and 627 the term 'farm' includes, among others, stock, mink, dairy, poultry, fruit and truck farms, plantations, ranches, ranges, apiaries, orchards, vineyards, nurseries, greenhouses, or other similar structures

used primarily for the raising of agricultural or horticultural commodities.''

Appellant contends most earnestly that the court erred in holding that the services upon which employer contributions were paid were not exempt as agricultural labor under the state act, sections 625 through 628, and in failing to recognize and follow the mandates of section 101 of said act. Appellant relies heavily on section 101 of the Unemployment Insurance Code which is concerned with unemployment compensation, and which provides:

''This part is a part of a national plan of unemployment reserves and social security, and is enacted for the purpose of assisting in the stabilization of employment conditions. The imposition of the tax herein imposed upon California industry alone, without a corresponding tax being imposed upon all industry in the United States, would, by the corresponding penalty upon California industry, defeat the very purposes of this law as set forth in this article. Therefore. when existing federal legislation which provides for a tax upon the payment of wages by employers in this State, against which all or any part of the employer contributions required under this part may be credited is repealed, amended, interpreted, affected or otherwise changed in such manner that no portion of such contributions may be thus credited, then upon the date of such change, the provisions of this part requiring employer contributions and providing for payment of unemployment compensation benefits shall cease to be operative. . . .''

Appellant points out that section 3306 of title 26 of the United States Code Annotated exempts from the Federal Unemployment Tax, under subdivision (c) (17), ''service performed by an individual in . . . the catching, taking, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacea, sponges, seaweeds, or other aquatic forms of animal and vegetable life. . . .'' Appellant argues that such employment would not be subject to federal unemployment tax and that section 101 of the Unemployment Insurance Code requires a holding that services rendered in connection with the raising and selling of oysters are exempt as agricultural labor. We are unable to agree with this contention.

Section 101 begins by specifically stating that the part of the code dealing with unemployment compensation is a part of a national plan of unemployment reserves and social security. The section next recognizes the fact that the tax im-

posed is in respect to California industry alone and that if there were not a corresponding tax being imposed on all industry in the United States, there would be a penalty on California industry which would defeat the purpose of the law. Accordingly, it then provides that if the existing federal legislation which provides for a tax upon the payment of wages by California employers against which the employer contributions required by the California law may be credited is repealed, amended, or changed to eliminate the credit allowed, the contribution provisions of the California law shall cease to be operative.

In brief, section 101 provides simply that if the federal credit is eliminated then the contributions required of California employers shall cease. The section confines itself to the effect of the federal credit upon the contributions required of California employers generally.

It is no doubt true, as argued by appellant, that where provisions in the federal and state laws are identical and similar in language federal interpretations are persuasive in determining how the state law is to be applied. Appellant cites *Scripps etc. Hospital* v. *California Emp. Com.*, 24 Cal. 2d 669 [151 P.2d 109, 155 A.L.R. 360]; *California Emp. Com.* v. *Kovacevich*, 27 Cal.2d 546 [165 P.2d 917]; and *Manchester Avenue Co.* v. *Stewart*, 50 Cal.2d 307 [325 P.2d 457], in each of which cases a specific exemption was involved and in which the court followed the federal interpretation of similar federal statutes. ▪ However, we think it is clear that even where the federal and state statutory provisions are similar, federal interpretations, while persuasive, are not necessarily controlling. (*Dias* v. *California Emp. Stab. Com.*, 113 Cal.App.2d 374 [248 P.2d 427]; see also *California Emp. Com.* v. *Butte County etc. Assn.*, 25 Cal.2d 624 [154 P.2d 892]; and *California Emp. Com.* v. *Kovacevich, supra,* in both of which appear dissenting opinions pointing out that application of the federal law would have exempted activities the majority held not exempt.)

▪ And even if we were to concede that section 101 should be given the broad and sweeping interpretation appellant sets forth, we would be unable to agree with appellant that appellant's employees were within the agricultural labor exemption. The contrary conclusion was reached by a federal court in a case involving this very appellant in which its contention that its business of raising, packing, canning and selling oysters was within the agricultural labor exemption in the

Federal Unemployment Tax Act (26 U.S.C. §§ 3301-3308) was rejected. Thus, in *Coast Oyster Co.* v. *United States* (D.C. W.D. Wash. 1958) 167 F.Supp. 460, 461, where appellant relied on both the agricultural labor exemption (26 U.S.C. § 3306, subd. (c) (1), and subd. (k)) and the "fishing exemption" (26 U.S.C. § 3306, subd. (c) (17)) in the Federal Unemployment Tax Act, the court expressly held:

*"Inclusion of plaintiff's employees within the agricultural labor provisions would do violence to the plain and unequivocal language of the exemption and would require a strained and twisted construction of the statute.* Moreover, having enacted a specific exemption applicable to employees in the fishing industry, it seems unlikely that Congress intended to exempt employees engaged in the same activities under a separate and different provision relating to agricultural workers." (Italics ours.)

■ The case of *California Emp. Com.* v. *Butte County etc. Assn., supra,* dealt with the general considerations which are applicable in any construction of the agricultural labor exemption. In construing the agricultural labor exemption, our Supreme Court stated at pages 630-631 (25 Cal. 2d):

"Preliminary to the discussion of the questions raised on this appeal, there are two general points of observation to be noted. First, in evaluating the defendant's activities to determine whether its employees are engaged in 'agricultural labor,' it must be remembered that the issue of classification arises in connection with the extension of an exemption from the provisions of a general welfare statute designed to reduce economic insecurity from unemployment by the levy of 'contributions' or taxes upon employers and their employees for the accumulation of a reserve fund from which 'benefits' can be paid to such latter persons as may become unemployed. The tax feature as to the reciprocal contributions of employers and their employees is but an incident, not the essence of the state unemployment insurance law, which in turn is integrated with the operation of comparable federal legislation. (*Gillum* v. *Johnson,* 7 Cal.2d 744 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595].) Such legislation is remedial in character, subject to a liberal construction to effectuate its purpose and to coincide with its reflection of public policy. (*County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634 [122 P.2d 526]; *California Unemployment Com.* v. *Black-Foxe Military Inst.,* 43 Cal.App.2d Supp. 868 [110 P.2d 729].) In the latter case the broad coverage intent of the act here involved

is recognized in the following language at page 872: 'The income tax law is purely a revenue measure, and upon the rule of strict construction applied to such laws, its scope may well be restrained to such matters as are clearly covered by it. Here we have a statute which, while it requires a "contribution" that in itself may possibly be regarded as a tax, has a much broader object than the mere raising of revenue. It sets up a scheme for ameliorating the hardships of unemployment, and undertakes, in conjunction with the United States Government, to pay unemployment benefits to those who, without fault of their own, are out of work, to impose the financial burden of doing this upon both employers and employees, and to measure both burden and benefits by the amount of compensation paid to employees when they are working. . . . *In view of the purpose of these provisions they should not be whittled down by narrow construction, nor should exceptions not clearly justified by their language be engrafted upon them by judicial interpretation.*' (Italics ours.)''

Respondent argues that any attempt to expand the agricultural exemption beyond the specific statutory language would violate fundamental rules of statutory construction and that "Exemptions from taxation must be found in the statute" (*Market St. Ry. Co.* v. *California State Board of Equalization,* 137 Cal.App.2d 87, 96 [290 P.2d 20]), and any doubt must "be resolved against the right to the exemption." (*Estate of Simpson,* 43 Cal.2d 594, 602 [275 P.2d 467, 47 A.L.R.2d 991].) Respondent quotes from *Santa Fe Transp. Co.* v. *State Board of Equalization,* 51 Cal.2d 531 [334 P.2d 907], at page 539: '' '. . . Also [Rev. & Tax. Code] section 9653 is an exemption statute, and as such is subject to the rule that exemptions from taxation are to be strictly construed against the taxpayer. [Citing cases.]' . . .''

Respondent contends that the agricultural labor exemption should be strictly construed; that it does not cover the business of raising and selling oysters; and that such coverage should not be "engrafted" upon the agricultural labor exemption "by judicial interpretation."

Appellant argues that the agricultural labor exemption is a broad exemption and must be construed to include the business of raising and selling oysters. Appellant states that section 626 provides: "Agricultural labor includes all services performed on a farm . . ." and that section 627 provides: "Agricultural labor includes all services performed in the employ of the owner or tenant of a farm: . . ."

Appellant argues that section 625 which states that "[e]mployment" for the purposes of this part does not include "agricultural labor" stands alone despite the detailed definitional coverage in sections 626 and 627. It argues that the Legislature by using the word "includes" in the beginning of each of these sections indicated its intent not to restrict or limit the agricultural labor exemption. ■ The word "includes" may, of course, be used as a word of enlargement rather than of limitation. Thus, the court in *People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 639 [268 P.2d 723], said: ". . . The statutory definition of a thing as 'including' certain things does not necessarily place thereon a meaning limited to the inclusions." But the fact that the word is not necessarily one of limitation does not mean that it is always used as a word of enlargement and never to restrict or limit. Thus, *In re Martinez,* 56 Cal.App.2d 473, 477-478 [132 P.2d 901], involved a statute which provided that the term "common carrier" as used in the Public Utilities Act "includes" certain enumerated groups specifically mentioned and described in detail. Faced with the necessity of determining whether taxicabs were common carriers, though not mentioned in the statute, the court held that as used in the Public Utilities Act "the word 'includes' is a word of limitation and has the effect of confining the term 'common carrier' to those agencies specifically mentioned therein." ■ The governing consideration here, and in all cases of statutory construction, is the intention of the Legislature. The question is whether the Legislature intended to use the word "includes" in sections 626 and 627 as a word of limitation or as a word of enlargement.

■ Section 626 sets forth six specifically defined categories of services which are within the agricultural labor exemption. Section 627 provides for two additional categories of services which are within the agricultural labor exemption. In view of this detailed elaboration of included services, we believe that the Legislature did not intend to use the term "includes" as one of enlargement in these sections any more than it did in the Public Utilities Act section involved in the *Martinez* case.

Furthermore, within section 626 itself, the Legislature has specifically in subdivisions (c), (d) and (e) used the word differently when it wished to make it clear that the word was being used to enlarge and not to limit. Thus, in each of those subdivisions the Legislature used the phrase, "includes, but

is not limited to.'' Similarly, in subdivision (f) of section 626 the terminology ''including, but not limited to'' is used. And section 628 provides that ''the term 'farm' includes, among others. . . .'' Since the Legislature has four times within section 626, and again in section 628, clearly indicated its intent to use the word ''includes'' as one of enlargement rather than of limitation, the contention that the Legislature did not intend to restrict or limit the agricultural labor exemption when it adopted sections 626, 627 and 628 should be rejected. On the contrary, under the *Martinez* case, and in view of the usage in different places in the same section and in section 628, the term ''includes'' in the opening portion of sections 626 and 627 should be regarded as further indication that the Legislature did not intend the agricultural labor exemption to cover the business of raising and selling oysters.

While there appears to be no California decision directly in point, our Supreme Court has had occasion to determine whether employees working for an employer conducting a trout farm business were engaged in ''farm, dairy, agricultural, viticultural or horticultural labor, in stock or poultry raising'' as those terms were used in the Workmen's Compensation Insurance and Safety Act of 1917. (Stats. 1917, ch. 586, p. 835.) In *Krobitzsch* v. *Industrial Acc. Com.*, 181 Cal. 541 [185 P. 396], at pages 545-546, the court construed the workmen's compensation exemption provision as follows:

''We are of the opinion that the petitioner is not entitled to exemption under the provisions of this act. It seems clear beyond question that the legislature did not intend to use in a general sense the terms employed in describing the excluded classes. If that had been the intention of the legislature it would not have used the terms 'farm, dairy, agricultural, viticultural or horticultural labor,' for 'farm labor' would, in the broad sense, include labor engaged in dairying, agriculture, horticulture, stock-raising and poultry-raising and anything which can be defined as cultivation of the soil (19 Cyc. 456; 2 C.J. 988). The very wording of the clause of the act upon which petitioner relies shows that the legislature was giving a restricted meaning to the term employed, and was segregating into certain definite and exclusive classes all kinds of 'labor' which in the broad and unrestricted sense would come under the head of farming. 'Farm labor' must, we think, be taken in its ordinarily accepted meaning as labor engaged in the production of hay, grain, vegetables and

the like by the tillage of the soil. To give the term a broader meaning would be to restrict the terms 'dairy, agricultural, viticultural or horticultural labor,' as used in the statute, for by the employment of the words used it is clear that the legislature did not intend to include dairy farming, fruit farming, grape growing, or, we may add, 'fish farming,' within the term 'farm,' or it would not have employed terms of narrowing import.

"Likewise, we must interpret the term 'stock-raising' in the sense in which it is commonly employed, namely, the raising of those domestic animals usually classed as 'livestock,' and commonly raised on farms or ranches, such as horses, mules, cattle, sheep, goats, hogs and the like. Petitioner has gone to great length in quoting from dictionaries and encyclopedias to show that the term 'stock-raising,' in its broadest sense includes the propagation of domestic trout. It is clear that if the term is to be taken in its generic sense it will include the propagation and rearing of all domestic animals, which, it may be conceded here, includes domestic trout. But it is equally clear that the legislature did not use the term in its generic sense so as to include the raising of all domestic animals, otherwise, 'poultry raising' would not have been specially mentioned."

In *Irvine Co.* v. *California Emp. Com.*, 27 Cal.2d 570, 581 [165 P.2d 908], the court discussed the relationship between the workmen's compensation and unemployment compensation laws and said, "it is reasonable to assume that the Legislature, in using the broad term 'agricultural labor' as a base exemption under our Unemployment Insurance Act, was cognizant and took account of the meaning ascribed to that term under our Workmen's Compensation Act. . . ."

We believe that the *Krobitzsch* case is pertinent herein and furnishes authority, in addition to that contained in *Coast Oyster Co.* v. *United States, supra,* for holding that the business of raising and selling oysters is not agricultural and that services rendered in connection with such a business are not within the agricultural labor exemption.

The Idaho Supreme Court in a case involving unemployment insurance specifically cited and relied on the *Krobitzsch* case in holding that an exemption for "services performed in the employ of an individual owner or tenant operating a farm in connection with the cultivation of the soil, the production and harvesting of crops or raising, feeding, or managing of livestock, bees or poultry, . . ." (ch. 182 Idaho 1941 Session

Laws, § 18-5(f).) did not cover services rendered for a person operating a trout farm. (*Meader* v. *Unemployment Compensation Division*, 65 Idaho 716 [136 P.2d 984].)

In 53 American Law Reports 2d 450, section 21, it is stated: "In *Meader* v. *Unemployment Compensation Division* (1943) 64 Idaho 716 [136 P.2d 984], the employees of one engaged principally in the raising of trout and spawn, who also operated a farm on which hay was raised for feeding to horses, which were slaughtered and fed to the fish, were held not within the exemption under the unemployment compensation law, which did not use the term 'agricultural labor' but excluded employment in connection with the 'raising, feeding, or managing of livestock.' The court held that the raising of fish was not within the generally accepted meaning of the term 'livestock,' and that employees engaged in such work were not within the exception."

As the court pointed out in the *Krobitzsch* case, *supra*, it is not enough that the terms used, taken in their generic sense and given the broadest possible meaning, would include the business of raising and selling fish or oysters. The question is whether the Legislature so used them.

We believe that if the Legislature had intended to use the term "agricultural labor" in its broadest sense then there would be no reason at all for sections 626 and 627. By its enactment of the detailed provisions in sections 626 and 627, the Legislature clearly indicated its intention to specifically define the term "agricultural labor" rather than leave its construction to the courts.

The Legislature has further indicated by its recent treatment of the agricultural labor exemption that it intended to use the terms in the popular rather than the generic sense. Thus, when it decided to include the raising of certain animals which the regulations stated were not livestock, it specifically amended the code to include the new subject matter. For example, in 1959, subdivision (f) of section 626 was amended to include rabbits. (Stats. 1959, ch. 865.) Similarly, in 1953 subdivision (f) of section 626 was amended to include mink (Stats. 1953, ch. 728); but the Legislature declined to add either chinchilla or fox, deleting them from the bill during the legislative session. (Assembly Bill 614, 1953 Regular Session.)

The full import of these additions and refusals to add becomes apparent when we realize that the California Unemployment Insurance Appeals Board had previously held that

services rendered in connection with the raising of rabbits (Tax Decision No. 1187 (1951)), chinchillas (Tax Decision No. 1188 (1951)), and mink (Tax Decision No. 1742 (1953)) were not exempt. If the Legislature had intended to use the terms contained in sections 625, 626 and 627 in their generic rather than their popular sense, it would have so stated in 1953 or 1959 rather than adding certain animals and refusing to add others.

We agree with respondent that the terms used in sections 625 et seq. are used in their popular rather than their generic sense. Appellant's contention to the contrary is in effect an argument that the specific provisions of the code and the later amendments were unnecessary because the term "agricultural labor" was intended to be given the broadest and most sweeping interpretation possible. For the reasons given above and especially for those discussed in the *Krobitzsch* and *Meader* cases, we believe that the agricultural labor exemption should not be so construed, and that as the court in *Coast Oyster Co.* v. *United States, supra* (167 F.Supp. 460, 461) said, "Inclusion of plaintiff's employees within the agricultural labor provisions would do violence to the plain and unequivocal language of the exemption and would require a strained and twisted construction of the statute."

We conclude that the term "agricultural labor" as used in the Unemployment Insurance Code was used by the Legislature in its popular and not in its generic sense and that under the authorities hereinbefore set forth, and for the reasons hereinbefore stated, the trial court correctly determined that services rendered to a corporation engaged in the business of raising and selling oysters should not be considered agricultural labor.

No other points raised require discussion.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1963.