[Civ. No. 12118. Third Dist. June 15, 1970.]

ZUCKERMAN-MANDEVILLE, INC., Plaintiff and Respondent, v.
G. L. SHEFFIELD, as Director, etc., et al., Defendants and Appellants.

## COUNSEL

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, William L. Shaw and Edward P. Hollingshead, Deputy Attorneys General, for Defendants and Appellants.

Daley, Brewer, Patridge & Garrett and Garry J. D. Hubert for Plaintiff and Respondent.

## OPINION

**REGAN, J.**—This is an action for a refund of unemployment insurance taxes paid under protest by the plaintiff, a farming corporation. The trial court, sitting without a jury, considered the case to be one of first impression, found for the plaintiff, and in so doing held section 627, subdivision (b) of the Unemployment Insurance Code to be unconstitutional as applied to the facts in this case.[1]

---

[1]Section 625 of the Unemployment Insurance Code (all references hereafter are to this code) exempts agricultural labor from unemployment insurance.

The section in question provides, in part, as follows:

"627. Agricultural labor includes all services performed in the employ of the owner or tenant of a farm:

" . . . . . . . . . . .

The Department of Human Resources Development appeals.

The respondent (plaintiff) is a farming organization, in no other business since 1956, its principal crops being potatoes, asparagus, tomatoes, onions and small grains, and its properties (some 7,000 acres) being in the San Joaquin Delta 15 to 25 miles west of the City of Stockton.

The corporation sells some of the potatoes and onions through a brokerage firm; asparagus and tomatoes are sold by the corporation itself. It packages or processes 100 percent of all products. The corporation maintains packing sheds of its own, on the ranch property itself and at the office of the corporation in Stockton. The office in Stockton is used mainly as a marshalling point for potatoes, seed potatoes, onions and asparagus. The packing operations are normally done at the ranch. The warehouse was acquired primarily as a storage point for seed potatoes.

In a normal year the corporation employs, on a peak day, approximately 1,200; however, in the quarter ended on June 30, 1965, approximately 8,000 employees were processed. The far greater amount of these employees are engaged in agricultural activities on the ranch.

The offices of the plaintifff have never been on the ranch itself, because the isolated position of the delta area made it mandatory that most of the offices be located in a place that could be reached by telephone or automobile. The farm roads are across levees, winding and narrow, and there are few, if any, housing facilities available, so that it was not practical to attempt to employ clerical personnel, when the business required, to live in an area as isolated as the main holdings. The offices of the corporation are located in the warehouse. There is an actual physical separation, by walls, between the warehouse and the office proper.

The employees who perform the physical handling of the products in the warehouse do not engage in the clerical and managerial functions which are performed in the office itself. The parties stipulated that for all times material to the petition for reassessment all the employees involved were either clerical personnel or corporate officers whose duties were performed in the office off the ranch.

The department refused to stipulate to the conclusion that the operations which are subject to the present inquiry "were an integral part of the ranch or farming operations." The trial court, however, in its findings of fact and conclusions of law concluded that the employment of management and clerical personnel "are an integral part of the plaintiff's farming"

"(b) In connection with the operation, management, conservation, improvement or maintenance of such farm and its tools and equipment if the major part of such services are performed on a farm in connection with ordinary farming operations."

and "are engaged in agricultural labor even though their duties are performed off the farm." Plaintiff contends that this fact is binding upon this court, citing *Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].[2]

The trial court further found: The employees of plaintiff corporation who are involved in this controversy constitute the management and clerical personnel; that the employment activities of such personnel are performed in connection with the operation, management, conservation, improving or maintenance of plaintiff's farm and its tools and equipment, and the major part of such activities are performed in the office and are not performed on the physical farm of the plaintiff. That plaintiff was assessed by defendant Department of Employment for unemployment and disability insurance contributions in the amount of $11,394.69 for the management and clerical personnel for the period from October 1, 1956, to September 30, 1964, including penalties and interest. The assessment was made on the basis that these personnel were not engaged in agricultural labor and were therefore subject to assessment under the Unemployment Insurance Code.

The trial court's pertinent conclusion of law reads as follows:

"As applied to such employees, Section 627(b) of the Unemployment Insurance Code of the State of California and Section 627(b)-1 of the California Administrative Code[3] are unconstitutional under Article I, Section 11, and Article I, Section 21 of the California Constitution, and the Fourteenth Amendment to the United States Constitution, in that, it consti-

---

[2]Nevertheless, this case involves the construction of a statute, and the interpretation of a statute, and its applicability to a given situation, is a matter of law to be determined by the courts. (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 188 [302 P.2d 574]; *Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630].)

Furthermore, since the basic facts are uncontradicted, this court is confronted purely with a question of law and thus is not bound by the findings of the trial court. (*Automatic Canteen Co.* v. *State Board of Equalization* (1965) 238 Cal.App.2d 372, 381 [47 Cal.Rptr. 848].)

[3]This section of title 22 reads: "627(b)-1. Specialized Services in Connection with Operation, Management, Conservation, Improvement or Maintenance of Farm — General. Specialized services in connection with the operation, management, conservation, improvement or maintenance of a farm and its tools and equipment are exempt if performed in the employ of the owner or tenant of such farm and the major part of such services are performed on the farm in connection with ordinary farming operations. Examples of specialized services are: electricians maintaining and repairing electric lines and motors; carpenters, painters, plumbers, blacksmiths, and mechanics constructing, repairing and maintaining buildings, tools, and farm equipment; bookkeepers, stenographers, timekeepers, clerks and other office help maintaining necessary books and records; and supervisors and managers performing services in connection with the operation, management, conservation, improvement or maintenance of the farm."

tutes an unconstitutional and arbitrary classification to declare that such employment is exempt if performed on the physical farm of the plaintiff, and not exempt from said Act if performed off the physical farm."

We hold the restriction of the agricultural labor exemption to services performed on the farm does not result in an unconstitutional discrimination against employers who cannot satisfy the requirements of the exemption.

### Constitutionality of Section.

The Unemployment Insurance Code generally exempts agricultural labor from its requirements. (§ 625.) Subdivision (b) of section 627, however, requires that certain services be performed "on a farm" in order to qualify for the exemption.[4] The trial court sustained the plaintiff's position that the denial of the agricultural exemption was a violation of the equal protection clause of the federal Constitution and the uniformity and privileges and immunities provisions of the state Constitution. (U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 11 and 21.)[5]

The rules to be applied in determining whether section 627 establishes an arbitrary or unreasonable classification were recently restated in *Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357, 367-368 [66 Cal.Rptr. 710, 438 P.2d 358]: "It is clear . . . that neither the equal protection clause of the United States Constitution, nor those provisions of the state Constitution which embody the principle of equality before the law, proscribe legislative classification per se. On the contrary such constitutional provisions, which in general assure that persons in like circumstances be given equal protection and security in the enjoyment of their rights [citation], permit classification 'which has a substantial relation to a legitimate object to be accomplished. . . .' [Citations.] So long as such a classification 'does not permit one to exercise the privilege while refusing

---

[4]At the outset we note that section 627, subdivision (b), parallels a federal statutory provision in the federal Unemployment Tax Act. Section 3306, subdivision (k), Title 26 of the United States Code provides:

"(k) Agricultural labor.—For purposes of this chapter, the term 'agricultural labor' includes all service performed—

". . . . . . . . . . .

"(2) in the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm."

[5]The test for determining the validity of a statute where a claim is made that it unlawfully discriminates against any class is substantially the same under these provisions. (*County of Los Angeles* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 389 [196 P.2d 773].)

it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground.' [Citations.] Finally, it is to be observed that a classification based on legislative experience is presumed valid and will not be rejected unless plainly arbitrary. 'Statutory discrimination between classes which are in fact different must be presumed to be relevant to a permissible legislative purpose, and will not be deemed to be a denial of equal protection if any state of facts could be conceived which would support it.' [Citations.]" (See also *Hargens* v. *Alcoholic Beverage Control Appeals Board* (1968) 263 Cal.App.2d 601, 607 [69 Cal.Rptr. 868].)

■ Applying these principles to the instant case, it is important to first note that exemptions from the Unemployment Insurance Act run counter to the basic purpose of that act which is to afford employees some protection from the risks of unemployment. This is clearly spelled out by the court's observations in *California Emp. Com.* v. *Butte County etc. Assn.* (1944) 25 Cal.2d 624, 630-631 [154 P.2d 892]: "Preliminary to the discussion of the questions raised on this appeal, there are two general points of observation to be noted. First, in evaluating the defendant's activities to determine whether its employees are engaged in 'agricultural labor,' it must be remembered that the issue of classification arises in connection with the extension of an exemption from the provisions of a general welfare statute designed to reduce economic insecurity from unemployment by the levy of 'contributions' or taxes upon employers and their employees for the accumulation of a reserve fund from which 'benefits' can be paid to such latter persons as may become unemployed. The tax feature as to the reciprocal contributions of employers and their employees is but an incident, not the essence of the state unemployment insurance law, which in turn is integrated with the operation of comparable federal legislation. (*Gillum* v. *Johnson*, 7 Cal.2d 744 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595].) Such legislation is remedial in character, subject to a liberal construction to effectuate its purpose and to coincide with its reflection of public policy. (*County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634 [122 P.2d 526]; *California Employment Com.* v. *Black-Foxe Military Inst.*, 43 Cal.App.2d Supp. 868 [110 P.2d 729].) In the latter case the broad coverage intent of the act here involved is recognized in the following language at page 872: 'The income tax law is purely a revenue measure, and upon the rule of strict construction applied to such laws, its scope may well be restrained to such matters as are clearly covered by it. Here we have a statute which, while it requires a "contribution" that in itself may possibly be regarded as a tax, has a much broader object than the mere raising of revenue. It sets up a scheme for ameliorating the hardships of unemployment, and undertakes, in conjunction with the United States Government, to pay un-

employment benefits to those who, without fault of their own, are out of work, to impose the financial burden of doing this upon both employers and employees, and to measure both burden and benefits by the amount of compensation paid to employees when they are working. . . . *In view of the purpose of these provisions they should not be whittled down by narrow construction, nor should exceptions not clearly justified by their language be engrafted upon them by judicial interpretations.*' (Italics ours.)

"Second, the principal reason for exempting 'agricultural labor' from social and industrial benefits resulting from remedial legislation has been administrative difficulties and accounting inconveniences in farm work (*Carmichael* v. *Southern Coal & C. Co.,* 301 U.S. 495 [57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327]), but with relation to employment in and operation and management of packing houses by respective associations, no such practical impediment exists. On the contrary, the usual economy, efficiency and skill with which such association units, functioning as adjuncts to agricultural pursuits, are operated by boards of directors and expert business managers, complemented with systematic office service, place them on no different level than other business enterprises insofar as concerns ability to comply with administrative computation procedure under unemployment compensation insurance laws. (*H. Duys & Co., Inc.* v. *Tone,* 125 Conn. 300 [5 A.2d 23].)"

 This expression of the court clearly sets forth the basic philosophy underlying the act and makes the following two points: (1) the act is set up to ameliorate the hardships of unemployment and thus the provisions "should not be whittled down by narrow construction" nor unnecessary exceptions engrafted thereupon;[6] (2) the primary reason for exempting agricultural labor from the act is the administrative difficulties and accounting inconveniences encountered in farm work. In the *Butte County* case the court also noted that where agricultural pursuits are operated by boards and managers, complemented with systematic office service, they are on no different level than other business enterprises with regard to the unemployment compensation insurance laws.

 Both of these factors are present in the instant case. There is no apparent reason why the clerical and management personnel of Zuckerman should not fall under the protective cloak of the act, and, secondly, there

---

[6]In *Coast Oyster Co.* v. *Perluss* (1963) 218 Cal.App.2d 492, 499-500 [32 Cal.Rptr. 740], this court had occasion to construe the agricultural labor exemption and cited the above language from the *Butte County* case with approval, stating (at p. 499) this case "dealt with the general considerations which are applicable in any construction of the agricultural labor exemption." See also *Santa Fe Transp. Co.* v. *State Board of Equalization* (1959) 51 Cal.2d 531, 539 [334 P.2d 907] [exemptions from taxation are to be strictly construed against the taxpayer.]

should be no administrative or accounting difficulty in carrying out the requirements of the act. In this regard, the court in *Butte County* stated (at p. 639): "The defendant's employees are in need of the same insurance protection against the hazards of unemployment; and the practical reason motivating the exemption in question—not a paramount purpose to benefit and encourage agriculture as such, but the avoidance of administrative difficulties in ascertaining and collecting the tax, involving expense disproportionate to the resulting advantage—does not exist here where the defendant association maintains a central place of business easily accessible to the taxing authorities and is equipped to keep adequate employment records."

Zuckerman, however, argues that the Unemployment Insurance Code itself indicates the arbitrariness of the exclusion of off-farm labor management and clerical labor from the basic agricultural exemption in that it allows some off-farm management and clerical personnel to qualify for the exemption but not others.

In this connection he cites subdivision (a) of section 627 of the Unemployment Insurance Code which allows certain off-farm labor to qualify for the basic agricultural exemption. This section reads:

"627. Agricultural labor includes all services performed in the employ of the owner or tenant of a farm:

"(a) In connection with the drying, processing, packing, packaging, handling, grading, storing, freezing, transporting to delivery point or point of first processing, and marketing of any agricultural or horticultural commodity the major part of which was produced by such owner or tenant."

We note again, however, that there is a comparable provision contained in the federal Unemployment Tax Act. Section 3306, subdivision (k), of Title 26 of the United States Code provides:

"(k) Agricultural labor.—For purposes of this chapter, the term 'agricultural labor' includes all service performed—

" . . . . . . . . . . . . . . .

"(4) in handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial

freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption."

■ As can be seen from the above, the California law on this subject closely parallels the federal system of unemployment insurance with regard to the exemption of agricultural labor.

It is quite true that both the federal and California statutes allow some workers to qualify for the exemption, but not others. However, as we noted above, citing from *California Emp. Com.* v. *Butte County etc. Assn., supra,* 25 Cal.2d at pp. 630-631, a principal reason for exempting agricultural labor "from social and industrial benefits resulting from remedial legislation has been administrative difficulties and accounting inconveniences in farm work." (P. 631.) No such problem exists here with the management and clerical employees of Zuckerman.

■ In view of the foregoing, we can find no constitutional infirmity in the classification set forth in section 627. Furthermore, we think Zuckerman's contention was adequately answered by the United States Supreme Court in *Carmichael* v. *Southern Coal & Coke Co.* (1936) 301 U.S. 495 [81 L.Ed. 1245, 57 S.Ct. 868, 109 A.L.R. 1327]. In that case the Court rejected arguments that a classification contained in the Alabama Unemployment Compensation Act infringed the due process and equal protection clauses of the Fourteenth Amendment. In that case the taxpayer complained that the Alabama statutes excluded employees of less than eight and for exempting certain other particular classes of employees. The Court stated:

"It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citations.] This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption infringe no constitutional limitation. [Citations.]

"Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Citations.]

"This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue

of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." (301 U.S. at pp. 509-510 [81 L.Ed. at p. 1253].)

Zuckerman relies heavily on *Irvine Co.* v. *California Emp. Com.* (1946) 27 Cal.2d 570 [165 P.2d 908]. In *Irvine,* the court held a *rule* of the California Employment Commission, to the effect that specialized services not closely connected with agriculture do not constitute "agricultural labor," to be unreasonable and arbitrary. The case is distinguishable. First of all, the personnel in *Irvine* were employed "on the farm." Secondly, this was a rule by an administrative agency and not a legislative enactment. *Irvine* turned on the construction of the term "agricultural labor." We have no such problem here and hold the classification to be valid. (Cf. *California Emp. Com.* v. *Kovacevich* (1946) 27 Cal.2d 546 [165 P.2d 917].)

The judgment is reversed.

Friedman, Acting P. J., and Janes, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 12, 1970.