(No. 7068. April 30, 1943.)

W. S. MEADER, Appellant, v. UNEMPLOYMENT COMPENSATION DIVISION OF THE INDUSTRIAL ACCIDENT BOARD OF THE STATE OF IDAHO, Respondent.

[136 Pac. (2d) 984.]

Milton E. Zener for appellant.

Hon. Bert H. Miller, attorney general, and Paul B. Ennis, W. B. Bowler, and Thomas Y. Gwilliam, assistant attorneys general, for respondent.

DUNLAP, J.—A representative of the Unemployment Compensation Division of the Industrial Accident Board determined appellant was liable for unemployment compensation contributions; an appeal from that determination was taken to the board, and on the hearing the parties stipulated briefly as follows:

That appellant owns approximately 125 acres of land in Power County, Idaho, that 30 to 35 acres are under cultivation, and that another 15 acres are capable of being cultivated; that about 15 acres are occupied by artificial ponds and buildings used in the conduct of appellant's business, to-wit: the propagation of trout and the production of spawn. The remainder of the property is pasture land. The appellant raises various products primarily for the pur-

pose of· supplying the appellant and his employees food for table use, and as an incident to the feeding of fish and the production of spawn. Appellant operates under the trade-name of W. S. Meader Trout Farm, and produces trout and spawn in the manner described in detail in the stipulation of facts. The trout are sold to meat markets, fish and poultry markets, hotels, railroads, and other agencies purchasing fish for food consumption, and the spawn is sold to private fish hatcheries, and to various fish and game departments.

On this stipulation, the board entered three conclusions, which were assigned as error. These conclusions, briefly stated, are: (1) That at all times from and after July 1, 1941, services performed in the employ of petitioner in connection with the operation of his fish hatchery, are in "covered employment", within the meaning of the Unemployment Compensation Law, and petitioner is required by law to report and pay contributions on services of said employees; (2) That the services of the employees in connection with his fish hatchery, are not services performed in the employ of an owner or tenant operating a farm in connection with the raising, feeding, or management of livestock, within the meaning of Sec. 18-5 (f), Chap. 182, of 1941 Session Laws; (3) That petitioner's farming operations are carried on only incidental to his fish hatchery, which is his principal occupation, and which is in "covered employment"; therefore, the services performed in petitioner's employ in connection with the cultivation of hay, and feeding or managing of horses which are slaughtered and fed as feed to fish, are services performed in "covered employment."

The only question presented on this appeal from the decision of the Industrial Accident Board, as stated by appellant in his brief, is whether or not the board was justified in finding that services performed by his workmen were not services in the employ of an owner or tenant operating a farm in connection· with the raising, feeding, or management of livestock, within the meaning of Sec. 18-5 (f), Chap. 182, of the 1941 Session Laws, being an amendment of the Unemployment Compensation Law, approved August 16, 1935, (Chap. 12, 1937 Laws, 3rd Extra. Session). In other words, appellant claims his employees were not in covered employment, as the services rendered

by them were in the class of excepted employment, within the meaning of the Unemployment Compensation Law.

The following provisions of Chap. 182, of the 1941 Session Laws, are pertinent:

"Sec. 18-1. Employment. The term 'employment', where used in this Act, shall, for the purpose of this act, mean service, including service in interstate commerce, performed by one or more individuals for wages, or under any contract of hire, written or oral, express or implied.

"Sec. 18-3. Covered Employment. The term 'covered employment' where used in this Act, shall, for the purpose of this act, mean an individual's entire service, including service in inter-state commerce, but excluding service excepted by Sec. 18-5 of this Act, performed by him for wages or under any contract of hire, written or oral, express or implied, both within and without the state, in the course of the trade, profession, or business of a covered employer, as defined in Sec. 7-5 of this Act * * *

"Sec. 18-5. Excepted Employment. The term 'covered employment' shall not include * * *

"(f). Services performed in the employ of an individual owner or tenant operating a farm in connection with the cultivation of soil, the production and harvesting of crops or the raising, feeding, or managing of livestock, bees, or poultry, or in connection with the processing, packing or marketing of produce of such farm, where such processing, packing or marketing is an incident to the ordinary farming operations of such individual owner or tenant; provided, however, that nothing in this subsection shall be construed to exclude from the term 'covered employment' services performed in the employ of any person or persons who operate a farm or farms only incidental to a principal occupation or occupations which would not otherwise be termed 'covered employment' within the meaning of this act."

Claimant of an exemption from a general tax levied by the legislature must show that such exemption was intended. This rule is stated in *Big Wood Canal Co. v. Unemployment Compensation Division*, 61 Ida. 247, 100 P. (2d) 49, by Justice Ailshie, as follows: "It is a recognized rule of construction, which has been followed in this state, that in order to successfully claim an exemption from a general tax, whether property or excise, laid by the legislature, it must appear by either express terms or necessary

implication, that the exemption was intended. (*Bistline v. Bassett*, 47 Ida. 66, 71, 272 P. 696; 62 A. L. R. 323; *Knoxville & Ohio R. Co. v. Harris*, 99 Tenn. 684, 43 S. W. 115, 53 L. R. A. 921, 926; *Bank of Commerce v. State of Tennessee*, 161 U. S. 134, 16 Sup. Ct. 456, 40 L. Ed. 645, 649; *Ford v. Delta & Pine Land Co.*, 164 U. S. 662, 17 Sup. Ct. 230, 41 L. Ed. 590, 592.)"

Appellant urges he is exempt from contributions under the provisions of Sec. 18-5 (f) of the Unemployment Compensation Act, above quoted, on the ground that fish are livestock, and that the legislature intended to include fish as livestock, as that term is used in said section.

In endeavoring to determine the meaning of the legislature as expressed in this statute, regard must be had to the rules of statutory construction, including the following:

In construing a statute, words and phrases are to be assumed to have been used in their popular sense, if they have not acquired a technical meaning. (Ex parte Bossner, 18 Ida. 519, 110 P. 502; *State v. Morris*, 28 Ida. 599, 155 P. 296; *Cook v. Massey*, 38 Ida. 264, 220 P. 1088, 35 A. L. R. 200; *Oregon Shortline R. Co. v. Pfost*, 53 Ida. 559, 27 P. (2d) 877.)

In re Winton Lbr. Co., 57 Ida. 131, 63 P. (2d) 664, this court, through Chief Justice Holden, held: "While in cases coming within the reach of the principle of ejusdem generis, general words are read not according to their natural and usual sense, but are restricted to persons and things of the same kind or genus as those enumerated, the rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the lawmakers. It affords a mere suggestion to the judicial mind that where it clearly appears that the lawmakers were thinking of a particular class of persons or objects, words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent especially the primary rule which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. The sense in which general words, or any words, are intended to be used, furnishes the rule of interpretation, and that is to be collected

from the context; and a narrower or more extended meaning will be given, according as the intention is thus indicated. The doctrine of ejusdem generis yields to the rule that an act should be so construed as to carry out the object sought to be accomplished by it, so far as that object can be collected from the language employed. (Citing cases.) Furthermore, the rule ejusdem generis must be considered in connection with the rule of construction that effect must be given to all the words of the statute if possible, so that none will be void, superfluous or redundant."

■ Where the statute specifies certain things, the designation of such things excludes all others. (*Peck v. State,* 63 Ida. 375, 120 P. (2d) 820.)

■ Appellant concedes that "livestock" is quite commonly thought of as including only the more ordinary forms of domesticated animals, such as cattle, sheep, hogs and horses. With this statement we are in accord. "Livestock" has been defined by our legislature as follows: "Every person, association or corporation who owns any cattle, hogs, horses, mules, asses or sheep in this state, and is engaged in the business of breeding, growing or raising the same, for profit or otherwise, is deemed a stockgrower, and *all cattle, horses, mules, asses, hogs and sheep are termed livestock."* (Sec. 24-1001, I. C. A.) But, appellant contends the raising and production of livestock, in its broader sense, includes the science, art and production of plants, and animals useful to man, including fish, and he quotes at length authorities to support his theory of broad construction. A like contention was made in a similar case considered by the Supreme Court of California, and the court said: "Likewise we must interpret the term 'stock raising' in the sense in which it is commonly employed, namely, the raising of those domestic animals usually classed as 'livestock', and commonly raised on farms or ranches, such as horses, mules, cattle, sheep, goats, hogs and, the like. Petitioner has gone to great length in quoting from dictionaries and encyclopedias to show the term 'stock raising', in its broadest sense, includes the propagation of domestic trout. It is clear that if the term is to be taken in its generic sense, it will include the propagation and rearing of all domestic animals, which, it may be conceded here, includes domestic trout. But it is equally clear that the legislature did not use the term in its generic sense, so as to include the raising of all domestic

animals, otherwise 'poultry raising' would not have been specifically mentioned." (*Krobitzsch v. Industrial Accident Commission,* (Calif.) 185 P. 396.)

In Sec. 18-5 (f), above quoted, it will be noted our legislature specifically mentioned the raising of bees and poultry as falling within "excepted employment", and as suggested in the California case, this would indicate that it did not use the word "livestock" in its generic sense, so as to include all domestic animals, otherwise the words "bees" and "poultry" are void, superfluous and redundant. (In re Winton Lbr. Co., supra.)

Our attention has not been called to the decision of any court holding fish are livestock, within the meaning of that word as used in the Unemployment Compensation Act, as contended by appellant, and applying the rule that words and phrases in a legislative act are assumed to have been used in their popular sense if they have not acquired a technical meaning, we cannot conclude our legislature so intended. The term "livestock", as commonly used and defined does not include "trout" or "spawn." (*Molina v. Rafferty,* 37 Philippine Reports, 545; Funk and Wagnalls New Standard Dictionary; Webster's International Dictionary, 2nd Ed.; *Howard & Herrin v. Nashville Railway Company,* 284 S. W. 894 (Tenn.) ; *Addison v. Norfolk S. Railway Company,* 129 S. E. 156 (N. C.) ; *James v. Atlantic Coast Railway,* 82 S. E. 1026 (N. C.) ; The Matilda A. Lewis, 16 Fed. Cas. 1108; In re Bridges, 287 N. Y. 782, 40 N. E. (2d) 648; "Fisheries", Vol. 17, 14th Ed., Encyclopedia Britannica, under "Pisciculture"; *Korbitzsch v. Industrial Accident Commission* (Calif.) supra.)

This conclusion is also supported by the statutory rule of construction taken from *Peck v. State;* supra, to the effect a designation of a specific thing excludes all others. Had the legislature intended to include the raising of fish and production of spawn in excepted employment, it would have said so, as it did with bees and poultry.

It therefore follows, the board did not err in its two conclusions first above set out. This brings us to the third conclusion to which exception is taken, namely, that petitioner's farming operations are carried on only incidental to his fish hatchery, which is his principal occupation.

This conclusion is supported by the stipulation of facts, which reads in part as follows: "That approximately 75% of the time of these employees was devoted to the raising

and marketing of rainbow trout and rainbow trout spawn, and approximately 25% of the time of said employees was devoted to the activities in connection with the cultivation of crops, care of livestock, and repair of buildings, fences, etc., * * * That the various products raised on said land and the milk, pigs and chickens raised on said land are used largely by the persons employed by your petitioner and that such activities are not conducted primarily for the purpose of raising produce or securing milk, pigs or chickens for general marketing purposes. That the cultivation of hay grown on petitioner's property, and the feeding and managing of horses which are slaughtered and fed as feed to fish, are actually carried on incident to the feeding and production or marketing of fish and spawn."

Sec. 18-5 (f), of said Chap. 182, 1941 Laws, reading in part as follows: "* * * provided, however, that nothing in this subsection shall be construed to exclude from the term 'covered employment' services performed in the employ of any person or persons who operate a farm or farms only incident to a principal occupation or occupations which would otherwise be termed 'covered employment' within the meaning of this word," is the answer to this contention, and this conclusion of the board could not have been otherwise.

We find no error in the conclusions reached by the board, and they must be, and each of them are, affirmed.

Costs to respondent.

Holden, C.J., Ailshie, Budge and Givens, JJ., concur.