428 P.2d 55

Dennis C. MANNING, Employee,
Claimant-Respondent,

v.

WIN HER STABLES, INC., Non-Insured Employer, Defendant-Appellant.

No. 9905.

Supreme Court of Idaho.

May 25, 1967.

550

Herman E. Bedke, Burley, for appellant.

Dean Kloepfer, Burley, for respondent.

SPEAR, Justice.

This is an appeal from an order of the Industrial Accident Board awarding claimant-employee, Dennis C. Manning, respondent herein, workmen's compensation benefits in the sum of $2,618.62 for injuries suffered in an accident while working for appellant Win Her Stables, Inc., a non-insured employer under the Idaho Workmen's Compensation Law. Appellant contests the allowance of the award on the ground that the Board was without jurisdiction in that the employment of respondent was an "agricultural pursuit," or was "casual employment," or both, making the Workmen's Compensation Law inapplicable thereto under the exemption provisions of the Act where the employer had not elected coverage under the statute. I.C. §§ 72–105A(1), (3), 72–105B.[1] (Win Her Stables had not elected coverage under the Act pursuant to section 72–105B at the date of respondent's injury.)

The facts on appeal may be briefly stated. Win Her Stables, Inc., is an Idaho corporation organized in July 1964. The corporation owns and operates a race track and stables for race horses on a 21-acre site just outside the city of Burley. The track, used for training race horses, is a one-half mile oval track, fifty feet in width, with a straight-of-way of 550 yards, equipped with a movable race horse starting gate. On the east side of the track there is an 18-stall horse barn, on the west side a larger barn, and a small stud horse barn stands in the middle of the corral joining the track on each side. The employer boards and trains horses, including horses on consignment from other owners; raises and sells colts, pastures brood mares, and keeps cattle for training cutting horses. The facilities of the training track and stables additionally are leased to other owners and trainers of horses.

Employee Manning is a twenty-one-year-old bachelor and resident of Burley. Win Her Stables hired respondent in early 1965 after he asked for a job training and exercising horses. The original agreement was that respondent would receive $15.00 per day. During his employment with appellant, respondent trained between 12 and 15 registered quarter horses specifically for racing. Respondent testified that he did not clean stalls or feed horses in the course of his employment. His job consisted first of "breaking" the horse and then running the horse on the track. For the most part, respondent worked his own hours, coming in at about 5:00 a. m. and leaving when he had completed exercising the horses in his care, which often took the greater part of the day.

The payment terms of respondent's employment were changed from $15.00 per day, to $1.50 per day for each horse exercised for the appellant, shortly before the accident which occurred on the 28th of April. At this time respondent was

1. I.C. § 72–105A, which provides exemption for enumerated employments from the provisions of the Idaho Workmen's Compensation Law, is relevant to the instant case as follows:

"72–105A. Employments not covered. —None of the provisions of this act shall apply to the following employments, unless coverage thereof is elected as provided in section 72–105B:

"1. Agricultural pursuits. Agricultural pursuits, as used herein, shall include the raising or harvesting of any agricultural or horticultural commodity including the raising, pelting, shearing, feeding, caring for, training, and management of live-stock, bees, poultry, and fur-bearing animals and wildlife raised in captivity, on enclosed lands and public ranges.

\*     \*     \*     \*     \*

"3. Casual employment."

handling 14 or 15 horses for his employer so that the change resulted actually in an increase in pay. The change in the computation of respondent's wages was made because respondent was also at this time training and working horses owned by Orval and Jack Thompson who had leased some of the stalls at the track from appellant. The new arrangement meant that when respondent worked for someone else it was on his own time which made it easier to keep a record of the work respondent did for appellant. The record also shows that on the morning of the accident respondent was asked whether he wanted a steady job with appellant or whether he intended to go to work for Orval Thompson when he moved to Boise or go into rodeoing. No definite answer was given, nor was any at this time required. However, respondent was told that if he stayed he would be required to clean stalls and feed horses in addition to his regular duties of breaking in and training horses.

On the date of the accident respondent was training a quarter horse named "Joe's Ariel," a two-year-old stud colt, for racing in the 1965 race season. The horse was either owned by appellant or had been consigned to appellant for training. Respondent worked with Joe's Ariel almost from the start of his employment with appellant but had not before taken the horse through the starting gate until this day. He rode the horse out of the starting gate without any difficulty, but the horse go too close to the inner rail of the track after passing the straight-of-way, and respondent lost control of the horse which jumped the rail throwing its rider. The respondent suffered a severely broken left ankle in the fall which left him with a permanent partial disability of 25 per cent as compared to the loss of the leg below the left knee. It is fully admitted by respondent that there was no negligence traceable to appellant involved in the mishap. Following the accident, respondent did not return to the employ of the appellant.

Joe's Ariel subsequently ran in pari-mutuel races in Idaho four times in the 1965 racing season. Six of the other horses respondent trained for appellant prior to his injury also raced in the 1965 season.

Appellant on his appeal from the award of the Industrial Accident Board presents two principal assignments of error. First, that the Board erred in not finding that the employment of the respondent was an agricultural pursuit within the meaning and intent of I.C. § 72–105A(1) exempting such employment from coverage under the Workmen's Compensation Law; secondly, the conclusion of the Board that the employment of the respondent was not casual employment which also is exempt from coverage under the Act by authority of I.C. § 72–105A(3).

Appellant lists two other specifications of error on appeal. First, the Board erred in assuming jurisdiction of this claim. This assignment is supported neither by cited authority nor argument in appellant's brief; and it is assumed appellant only attempts to convey by this assignment the well-recognized proposition that the defense of casual employment and agricultural pursuit, specifically raised, are jurisdictional. Second, the Board erred in finding that appellant operated a race track. This assignment is immaterial to the present appeal.

■ The employer has the burden of proving that the employment of a claimant is exempt from coverage under the Workmen's Compensation Law in proceedings before the Industrial Accident Board. The burden upon the defendant-employer claiming exemption from coverage under the terms of I.C. § 72–105A was most recently discussed in Collins v. Moyle, 83 Idaho 151, 155, 358 P.2d 1035, 1036:

"This court has repeatedly held that the Workmen's Compensation Law must be liberally construed with the view to effect its purpose and promote justice. * * * Idaho Code, § 72–101 provides that the act shall apply 'to all private employment not expressly excepted by the provisions of section 72–105.' In pursu-

ance of this policy of the law, this court will not restrict its coverage by construction in cases where such restriction is not fairly required by the terms of the act itself. Accordingly we have held that an employer claiming exemption from coverage under § 72–105 has the burden of proving that his employment is not covered."

Cf. Kiger v. Idaho Corp., 85 Idaho 424, 380 P.2d 208; Frisk v. Garrett Freightlines, 76 Idaho 27, 276 P.2d 964; Long v. Brown, 64 Idaho 39, 128 P.2d 754; Pierstorff v. Gray's Auto Shop, 58 Idaho 438, 74 P.2d 171. In determining whether a claimant is engaged in an agricultural pursuit exempt from coverage under the Workmen's Compensation Law by authority of I.C. § 72–105A(1) that subdivision, as well as the Workmen's Compensation Law, and all proceedings under it, must be liberally construed with a view to effect the object of the law and promote justice. Mundell v. Swedlund, 59 Idaho 29, 80 P.2d 13; Dorrell v. Norida Land & Timber Co., 53 Idaho 793, 27 P.2d 960.

Appellant has failed to sustain its burden of proof within the rule set forth in Collins v. Moyle, supra, and the first assignment of error by appellant is without merit.

The Idaho legislature in 1961 amended the definition of "agricultural pursuits" in I.C. § 72–105A(1) from "Agricultural pursuits, as used herein, shall include the caretaking and handling of livestock on enclosed lands and public ranges" to the broader definition: "Agricultural pursuits, as used herein, shall include the raising or harvesting of any agricultural or horticultural commodity including the raising, pelting, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife raised in captivity, on enclosed lands and public

ranges" which now appears in the current 1965 amendment of section 72–105A(1). Appellant contends that respondent was engaged in the "caring for, training, and management of livestock" and therefore not covered by workmen's compensation provisions. Such reasoning is clearly erroneous since the employment of respondent must have been an included "agricultural pursuit" within the definition of I.C. § 72–105A(1), which we conclude it was not.

Our attention has not been called to a single case involving a similar or sufficiently analogous issue of fact and law to control the disposition of the instant case [2] and whether the employment of respondent is an "agricultural pursuit" within the meaning of the statutory provision must be decided on the particular facts presented. See Smythe v. Phoenix, 63 Idaho 585, 592, 123 P.2d 1010, 1013:

"* * * it is somewhat difficult to, by general rule or definition, completely and adequately cover prospectively and in detail what may or may not be agricultural pursuits or agricultural labor, and it is rather necessary, as in workmen's compensation cases, to decide each case upon the particular facts involved and by applying pertinent general rules decide the individual case and place it in one category or the other."

Reedy v. Trummell, 90 Idaho 318, 410 P.2d 654 (1966), approved the reasoning of earlier cases in which the meaning of "agricultural pursuits" had been considered, and while this latter case is the only one wherein the question was presented following the aforementioned 1961 amendment, prior decisions afford an indication of the legislative intent exempting agricultural pursuits from coverage under workmen's compensation provisions.

2. Carroll v. General Necessities Corporation, 233 Mich. 541, 207 N.W. 831 (1926), is the one case located in our research which, on its facts, presented an issue somewhat analogous to the case at bar. That court in a short one page opinion held that a teamster injured while taking care of horses in a barn owned by his employer, who was engaged in the trucking business, but was not operating a farm, was not a "farm laborer" excluded from that state's Workmen's Compensation Act.

"The term 'agricultural pursuit' has been interpreted to include 'every process and step taken and necessary to the completion of a finished farm product.'" 90 Idaho at 320, 410 P.2d at 656.

"'Agriculture is the art or science of cultivating the ground, especially in fields or in large quantities, including the preservation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding and management of livestock; tillage; husbandry; * * *. The terms include all farm work and work incidental thereto.'" 90 Idaho at 321, 410 P.2d at 656.

The situation often is presented that an employer is engaged both in non-covered agricultural pursuits and in covered commercial activities, and an employee may be employed in one or the other area, or both. This problem was discussed in Hubble v. Perrault, 78 Idaho 448, 453, 304 P.2d 1092, 1094–1095, wherein the court concluded:

"We conceive the rule in this jurisdiction to be that the general character of the work for which the employee was hired or is required to perform is the test of whether the labor was performed in a covered employment or in an exempt employment. Where the employee is a general employee engaged in the general business of his employer, then the principal business of the employer, whether it be a covered occupation or an exempt occupation, governs the nature of the employment of the employee. Where the employer is principally engaged in a covered occupation, the general employee is covered although he was incidentally engaged in an exempt occupation at the time of the accident. Likewise, if the principal occupation of the employer is exempt, the employee is not covered although at the time of the accident he was engaged in performing services in a covered occupation.

"On the other hand, where the employer is engaged in both a covered occupation and an exempt occupation, a special employee employed to work exclusively in the covered occupation is covered, and likewise an employee hired to work exclusively in an exempt occupation is not covered, regardless of which occupation is the principal one of the employer."

See generally Collins v. Moyle, supra (decision prior to 1961 amendment); Hubble v. Perrault, supra; Bartlett v. Darrah, 76 Idaho 460, 285 P.2d 138; Mulanix v. Falen, 64 Idaho 293, 130 P.2d 866; Mundell v. Swedlund, supra; Gloubitz v. Smeed Brothers, 53 Idaho 7, 21 P.2d 78; Dorrell v. Norida Land & Timber Co., supra; Cook v. Massey, 38 Idaho 264, 220 P. 1088, 35 A.L.R. 200, which have discussed the defense of agricultural pursuit.

■■ The evidence establishes, and the Industrial Accident Board found, that the appellant operated a training track and stables for race horses, boarded and trained horses for other people, raised and sold colts, pastured brood mares and kept cattle for training cutting horses. It is also clear that the work for which respondent was hired was a special part of the general operation of his employer, i. e., the general character of the work for which he was hired and which he performed was the exercising and training of 10 to 15 race horses. Respondent was a special employee and consequently, following the rule enunciated in Hubble v. Perrault, supra, only the character of respondent's specialized employment need be considered in determining whether he was engaged in an "agricultural pursuit."

Applying general principles to the particular facts of the instant case, we conclude that respondent's employment was not agricultural as the term is commonly understood but was special work, not ordinarily done by farmers, that partook of a commercial character entirely separate and apart from an agricultural pursuit. The finding of the Board to this effect and the neces-

sary conclusion which followed, i. e., that the injury respondent received was in the course of covered employment, is fully substantiated.

Appellant's further contention that the employment of respondent was casual employment as that term is used in I.C. § 72–105A(3) exempting such employment from the provisions of the Workmen's Compensation Law is also without merit and the finding of the Industrial Accident Board on this issue is sustained.

■■ Wachtler v. Calnon, 90 Idaho 468, 413 P.2d 449 (1966), is the most recently reported case discussing the meaning of casual employment as that term is used in the statute. The court concluded the word "casual" applies to the employment and not to the employee, citing Rabideau v. Cramer, 59 Idaho 154, 81 P.2d 403, and reaffirmed the principle that a hard and fast definition of "casual employment" is not possible, but that each case must be decided largely upon its own facts. The court then re-adopted the general definition of casual employment set forth in Flynn v. Carson, 42 Idaho 141, 243 P. 818, and quoted with approval the summation of that opinion in Vogl v. Smythe, 74 Idaho 115, 258 P.2d 355, at 90 Idaho 471–472, 413 P.2d at 450.

" '* * * this court construed the term as employed in our statute to mean an employment that arises occasionally or incidentally or which comes at uncertain times or at irregular intervals, for a limited or temporary purpose and whose happening cannot be reasonably anticipated as certain or likely to occur or to become necessary or desirable and which is not a usual concomitant of the business, trade or profession of the employer. Flynn v. Carson, 42 Idaho 141, 243 P. 818.

" 'The test as set forth in Flynn v. Carson, supra, has been consistently followed and approved without deviation. Orr v. Boise Cold Storage Co., supra [52 Idaho 151, 12 P.2d 270]; Dillard v. Jones, 58 Idaho 273, 72 P.2d 705; Rabideau v. Cramer, 59 Idaho 154, 81 P.2d 403; Dawson v. Joe Chester Artificial Limb Co., 62 Idaho 508, 112 P.2d 494; Ross v. Reynolds, 64 Idaho 87, 127 P.2d 775; Bigley v. Smith, 64 Idaho 185, 129 P.2d 658; Schindler v. McFee, 69 Idaho 436, 207 P.2d 1158; Lail v. Bishop, supra [70 Idaho 284, 216 P.2d 955]; Fitzen v. Cream Top Dairy, 73 Idaho 210, 249 P.2d 806.' "

■ The employment of respondent did not arise occasionally or inadvertently, nor for a limited or temporary purpose; but was a necessary and integral part of his employer's horse racing activities and the usual concomitant of the horse racing business of his employer. Respondent himself had been regularly employed at this specialized activity for over six weeks. The regular nature of respondent's employment, as the Board noted, was not altered by the fact that respondent worked for owners of other horses boarded at his employer's stables, nor because respondent worked at his own hours and was paid on the basis of horses trained rather than hours worked. The conclusion of the Board that the work of exercising and training horses was an essential part of the business of appellant and therefore respondent's employment was not "casual" within the meaning of I.C. § 72–105A(3) is affirmed.

Order of Industrial Accident Board affirmed. Costs to respondent.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.