612 P.2d 557
Charles Allen FORD,
Claimant-Respondent,

v.

BONNER COUNTY SCHOOL
DISTRICT, Employer,

and

State Insurance Fund, Surety,
Defendants-Appellants.

No. 13299.

Supreme Court of Idaho.

June 12, 1980.

Philip E. Dolan, Dolan & Jacobsen, Coeur d'Alene, for defendants-appellants.

W. W. Nixon, Coeur d'Alene, for claimant-respondent.

DONALDSON, Chief Justice.

This is an appeal from an order of the Industrial Commission which awarded claimant unreimbursed medical expenses and income benefits for partial temporary and permanent disability.

The facts of this case, which are not in dispute, are as follows. Claimant Charles Ford was a Coeur d'Alene businessman and television shop owner as well as a part time football and basketball official and a dues paying member of the North Idaho Officials' Association for twenty years. On October 25, 1974, Ford was assigned to referee the football game between Lewiston and Sandpoint high schools, and had been paid by Bonner County School District for his officiating duties prior to the game. Shortly after the game started, Ford was injured on the playing field when he became trapped in a play and was accidently struck by one of the players. He sustained a crushing injury to his left knee.

Ford was disabled for approximately 13 weeks. Though he was able to travel to and from his television repair shop, he was basically disabled for his usual and ordinary work during that period. Ford filed a

workmen's compensation claim against Bonner County School and its surety, State Insurance Fund, shortly thereafter. A hearing was held before the Industrial Commission on November 20, 1975, during which the claimant presented evidence relating to his injury.

Following a lapse of several years during which neither party took any further evidence on the matter, the Industrial Commission made its findings of fact and conclusions of law on February 12, 1979. The Commission concluded that the claimant was acting as an employee of the school district at the time of his injury since he was paid by the defendant district and since the local coach had the right through the rating system established by the North Idaho Officials' Association to reject the claimant as an official. Further, the scheduling of the time and place of the game was outside the control of the claimant. Under the holding of *Ledesma v. Bergeson*, 99 Idaho 555, 585 P.2d 965 (1978), the Commission determined that the general test establishing the employer-employee relationship was met since the employer had the right to control and direct the activities of the claimant.

On this basis, the Commission awarded Ford income benefits for partial permanent and temporary disability, as well as unreimbursed medical expenses, totalling $8,902.94. The school district moved for a reconsideration of the decision, arguing that Ford was not entitled to workmen's compensation benefits because he was not an "employee" of the district. Following denial of its motion, the school district filed its appeal to this Court. Upon reviewing the record, we affirm the decision of the Industrial Commission.

On appeal, this Court may only set aside the award of the Industrial Commission when the findings of fact clearly do not, as a matter of law, support the award. I.C. § 72–732(4); *Beutler v. MacGregor Triangle Co.*, 85 Idaho 415, 419, 380 P.2d 1, 3 (1963). Where the Commission's findings are supported by substantial and competent evidence, they will be sustained on appeal.

*Murray v. Hecla Mining Co.*, 98 Idaho 688, 690, 571 P.2d 334, 336 (1977).

Here, the Industrial Commission heard the testimony of Ford regarding the nature of his injuries and the nature of his duties as an officiating referee. As a result of this testimony, the Commission found that claimant and others who desired to become officials had to pay dues and pass examinations to establish their competence. Claimant was assigned to officiate a particular game several weeks in advance and could not refuse an assignment unless he had good cause. Assignments were determined by the commissioner for the high schools in the North Idaho District of the Idaho High School Activities Association, and the commissioner was paid by the member schools themselves. A school which accepted the claimant as an official for one of its games paid him in advance and often paid his travel expenses as well. If a school did not desire the claimant as a referee the local coach had the right, through the rating system established by the North Idaho Officials' Association, to reject the claimant for that school.

While the Commission found that all officials, including claimant, furnished their own uniform, shoes and whistle, the costs of such equipment were minimal in comparison to the playing field, stands, yard markers, and other equipment provided by the school. Prior to the game, the school was in control of the field and was responsible for claimant's safety. While the game was in progress, the claimant had responsibility for the game. Finally, the claimant believed that the school could relieve him of his duties for misconduct, such as arriving at the game to officiate after consuming alcohol.

Based on these findings, the Commission concluded that claimant was acting as an employee of the school district at the time of his injury. Because Ford had been paid in advance by the school district, because the local coach had the right to reject the claimant as an official through the rating system, and because the claimant had no control over the scheduling of the time

and place for performance of his officiating duties, the school district had the right to control and direct the activities of Ford as an employee under the "right to control" test noted in *Ledesma v. Bergeson, supra* at 559, n. 2, 585 P.2d at 969, n. 2. Ford therefore qualified as an "employee" for purposes of the workmen's compensation statutes.

Since the Commission's findings were supported by substantial, competent evidence, they will not be set aside. *Murray v. Hecla Mining Co., supra*. We therefore affirm the order of the Industrial Commission awarding partial temporary and permanent disability benefits and medical compensation to the claimant.

Affirmed, with costs to respondent. No attorney fees allowed.

SHEPARD and BISTLINE, JJ., concur.

McFADDEN, Justice, dissenting.

I agree with the majority that this court's review of workmen's compensation cases appealed from the Industrial Commission is limited to the review of questions of law. Idaho Const. art. 5 § 9; *Ledesma v. Bergeson*, 99 Idaho 555, 557, 585 P.2d 965, 967 (1978). Because I feel that the Industrial Commission's ruling that respondent Ford was an employee was not supported by substantial evidence, I must respectfully dissent from the majority's affirmation of the Commission's decision. *Ledesma v. Bergeson, supra; Beutler v. MacGregor Triangle Co.*, 85 Idaho 415, 380 P.2d 1 (1963); *Comish v. J. R. Simplot Fertilizer Co.*, 86 Idaho 79, 383 P.2d 333 (1963).

The question here for determination is whether respondent Ford was an employee of appellant Bonner County School District (district), or an independent contractor for the purposes of workmen's compensation. The determination of whether one is an employee or an independent contractor is not dependent on any single fact, but must be decided from all the circumstances surrounding the contractual relationship. *Anderson v. Gailey*, 97 Idaho 813, 820, 555 P.2d 144, 151 (1976). However, the "right to control" test as set out in *Beutler v. MacGregor Triangle Co., supra*, 85 Idaho at 421, 380 P.2d at 4, is the most persuasive indication of one or the other.

"[N]o one test standing alone, except the right of control in the relationship of employee and employer, and the lack of such right in that of principal and independent contractor is wholly decisive.

'. . . The general test is the *right* to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee.' . . . 'An independent contractor . . . is one who, in the course of an independent employment, undertakes to perform work subject to the control of the person for whom the work is done only as to the result or product of the work, and not as to the means or methods used.' . . . 'The right of control by which the nature of the employment is tested is the right to control the work, the details of the work, the manner, . . . means or method of doing the work, as contrasted with the result thereof.' " (Citations omitted.)

*Accord: Anderson v. Gailey, supra; Smith v. Sindt*, 89 Idaho 409, 405 P.2d 959 (1965); *Merrill v. Duffy Reed Const. Co.*, 82 Idaho 410, 353 P.2d 657 (1960); *Wilcox v. Swing*, 71 Idaho 301, 230 P.2d 995 (1951); *Laub v. Meyer*, 70 Idaho 224, 214 P.2d 884 (1950); *Ohm v. J. R. Simplot*, 70 Idaho 318, 216 P.2d 952 (1950); *Pinson v. Minidoka Highway Dist.*, 61 Idaho 731, 106 P.2d 1020 (1940); *Gale v. Greater Wash. Softball Umpires Ass'n*, 19 Md.App. 481, 311 A.2d 817 (1973). *See Ledesma v. Bergeson, supra* at n. 2; *Daniels v. Gates Rubber Co.*, 479 P.2d 983 (Colo.App.1970).

The essential question is then whether the contract gave or the district assumed the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Ledesma, supra*, 99 Idaho at 558,

585 P.2d at 968. · A close analysis of the facts of *Ledesma*, the principal case cited for support by the majority, reveals that the opposite conclusion from that found by the majority must be reached. In *Ledesma* the Commission found that the deceased was an employee and made an award to his widow, the plaintiff-respondent. This court held that this award was not supported by substantial evidence.

Ledesma was a farm laborer hired to cut and load cabbage for Bergeson. He was to be paid $3.00 per ton of loaded cabbage. Ledesma could hire any additional assistants and pay them himself. Bergeson could fire Ledesma if the results were unsatisfactory. Bergeson also retained the right to instruct Ledesma as to how the tasks were to be accomplished. The Industrial Commission determined that Ledesma was an employee, citing the fact that Bergeson had the authority to instruct Ledesma as to how the tasks were to be accomplished and to discharge Ledesma if necessary. Because of this, the Commission found that Bergeson had the right to control all activities of Ledesma while he was employed. The court held that because Ledesma could hire and fire assistants, that Bergeson only exercised the control necessary to insure satisfactory results, that the right to fire Ledesma was not an unqualified right but the right of a principal to terminate the contract of an independent contractor for unsatisfactory work, and the fact that Ledesma controlled the hours of work all are indicative of the fact that Ledesma was an independent contractor and not an employee.

In the case at hand there is even less indicia of an employee-employer relationship than in *Ledesma.* The Commission found that because the respondent was required to pay dues and pass examinations to establish his competence as a referee, that he was assigned to officiate a particular game weeks in advance and could not refuse an assignment without good cause, that the respondent was paid directly by the school, that he was paid travel expenses, that the school could rate the referee in order to keep him from officiating one of their games, and the fact that the school controlled the field prior to the game were supportive of the fact that the respondent was an employee. However, not only are a number of these factors not supportive of the finding, the Commission must also consider other factors which are more persuasive indicia to be considered in reaching a decision as to the nature of the relationship. The most important of these, who had control of the work performed during the game, leads one to the opposite result from that reached by the Commission.

Once the game began, the district had no control over the manner in which the referee carried out his duties, although they did set the time of the game. The very essence of the position of a referee requires that the referee be free from control by the district. To hold otherwise would subject the referee to the position of being influenced in his decisions by his "employer's" desires. He must remain neutral. The district had less control over the performance of duties by the referee than did the employer in *Ledesma.* The *right* to control, not the *actual* control, is the deciding factor and during the game the district had no right to interfere at all. In *Ledesma*, the employer could at any time "inspect" the cabbage and insure that it was being cut to "specifications." But in the instant case, at no time during the football game did the school district have the right to "inspect" or review the referee's decisions, or to alter or change them if the district believed they were not in conformance with the "specifications" (the rules of play for high school football games).

In addition, there are other factors present in this case that this court has held to be indicia of a principal-independent contractor relationship. The district could not unconditionally fire the employee while they could give him a low rating which would probably keep him from coming to their school. However, he would still be a member of the association and able to officiate other games in the conference and even likely to officiate other games involving the Bonner County district schools when

they were not the home team. *See Smith v. Sindt, supra.* While Ford testified that he thought the district could reject him when he arrived to officiate a game for such things as drunkenness they did not have the right to reject him without cause. (*Ledesma v. Bergeson, supra.*) In fact, the district has less right of discharge than did Bergeson, because the district did not hire the referee directly and the opposing team had an interest as well. The school could not choose a particular referee for a particular game. They had to take whoever the Commissioner assigned for the evening. The fact that the school paid the referee is not indicative of either type relationship, while the fact that Ford was paid for a specified piece of work is indicative of a principal-independent contractor relationship. *Ledesma v. Bergeson, supra; Merrill v. Duffy Reed, supra; Laub v. Meyer, supra; Gragg v. Cook Cedar Co.*, 64 Idaho 50, 127 P.2d 757 (1942). Ledesma was paid for a ton of cabbage regardless of the length of time it took to gather it; Ford was paid for one football game regardless of how long it took to play it. The district negotiated the price per game with the association, not with the individual referee. The payment was made prior to the game. The referee was not on the payroll. See *Merrill v. Duffy Reed, supra.* No deductions were taken from his pay for taxes or social security. He was not given the benefits which other district employees were given. He bought his own uniform, shoes, hat and whistle. See *Wilcox v. Swing, supra; Merrill v. Duffy Reed, supra.* From all these factors it is evident that the respondent was an independent contractor and not an employee.

There are two cases that have addressed the very question at issue here, whether an umpire is an employee or an independent contractor. *Daniels v. Gates Rubber Co., supra*, 479 P.2d 983; *Gale v. Greater Wash. Softball Umpires Ass'n, supra*, 19 Md.App. 481, 311 A.2d 817. In both these cases the umpires were held to be independent contractors and not employees.

In *Daniels*, the umpire, Daniels, was hired by the athletic director of Gates Rubber Company to officiate at games held by the employees of Gates. He was paid by the Gates Fire Brigade, a recreation association of Gates employees. The record is unclear as to where the Brigade obtained its funds to pay Daniels. The game was played on a field owned by Gates. The Gates recreation director arranged for presence of umpires to officiate the games with the Umpires Association of Colorado. This association's principal function was to arrange to have its members officiate games upon the request of parties for this service. Daniels belonged to the association. While officiating a game for Gates he was injured.

The workmen's compensation referee found that Daniels was an employee for workmen's compensation purposes and made an award. This decision was overturned by the Commission and affirmed by the court. The court in holding that the compensation referee was in error looked to such factors as:

1. Gates exercised no control over the umpire nor did they have a contract with him.
2. The games were not part of Gates' regular business.
3. The employment was not pursuant to any regular schedule but depended upon the times an umpire service was required.

The court held that at best Daniels was only a casual employee at the time of his injury, if he was an employee at all, and therefore not covered by workmen's compensation.

In *Gale v. Greater Wash. Softball Ass'n, supra*, 19 Md.App. 481, 311 A.2d 817, the claimant sued the association of umpires to which he belonged. Like the case at hand, Gale was tested and certified by the association and paid dues to belong to it. Under the association rules, the umpire was paid directly by the association. The team captain of the game officiated signed a game slip which was sent to the commissioner. The claimant was covered by insurance that was selected by the association for which he was charged. The commissioner of the association gave the assignments which the claimant could refuse until twenty-four hours before game time. The court, utiliz-

ing the right to control test outlined above, held that the umpire was an independent contractor. The court looked to a number of factors in making this decision but relied principally on the fact that being a member of the association was not consistent with being its employee, as there was no control of the umpire's conduct while officiating the game, such as to establish an employee-employer relationship. The conduct of the game was in the sole control of the umpire, even though he was required to abide by the rules of softball. *Gale v. Greater Wash. Softball Ass'n, supra,* 311 A.2d at 821–822.

Although there are factual differences between *Gale* and *Daniels* and the instant case, the holding in both are applicable to the case at hand. As in both, the district had no control over the umpire's conduct during the play of the game.

Therefore, as there is no substantial evidence to support the finding by the Commission, and the holding of the majority, that Ford was an employee of the district, I must dissent.

BAKES, J., concurs.