682 P.2d 1275

**Linda J. Heath TUMA, Claimant-Respondent,**

v.

**William J. KOSTERMAN, Fantasy Thoroughbred Farms, Employer, Defendant-Appellant.**

No. 14516.

Supreme Court of Idaho.

June 14, 1984.

Robert J. Insinger, of Risch, Goss, Insinger & Salladay, Boise, for defendant-appellant.

Ronald M. Morris, and Charles B. Bauer, of Lyons, Bohner, Chasan & Walton, Boise, for claimant-respondent.

DONALDSON, Chief Justice.

This case is an appeal from a ruling of the Idaho Industrial Commission on the sole issue of whether appellant (employer) may claim an exemption from liability under the Idaho Workmen's Compensation Act. Respondent (employee) was injured while on appellant's premises on September 29, 1980, and subsequently petitioned the Idaho Industrial Commission for compensation pursuant to the Workmen's Compensation Act. Appellant contended that he was exempted from liability on the following theories: (1) appellant's thoroughbred horse business was an exempt activity under I.C. § 72–212(8), as an agricultural pursuit; (2) respondent was an independent contractor as defined by I.C. § 72–102(13); and (3) respondent's employment was casual pursuant to I.C. § 72–212(2). Appellant appeals from the Industrial Commission's finding that he was not exempt from liability under the Workmen's Compensation Act, and thus was required to pay compensation to respondent. We affirm the order of the Industrial Commission.

Appellant owns and operates Fantasy Thoroughbred Farms. At the time of the hearing, thirty acres of the 110-acre farm were used to conduct a thoroughbred horse

operation, with the remainder leased to third parties. Appellant had approximately sixty thoroughbred horses at his farm including stallions, brood mares, yearlings, and twenty to twenty-five horses used specifically for racing. He had been raising horses for approximately thirty years. Appellant testified that approximately 50% of the farm revenue stemmed from winning races with his horses, and the other 50% from the sale of horses that were not to be used in the racing operation. In addition to owning and conducting the thoroughbred business, appellant was employed full time at an outside venture.

To train horses for the racing circuit, it is first necessary to gallop them on a regular basis for several months before training begins. Before the time of the alleged accident, appellant had always sent his horses to professional trainers where the galloping service was performed. Appellant later decided he would begin galloping his horses on the farm. He contacted respondent to see if she would gallop his horses. It was decided that respondent would begin on September 29, 1980. Respondent would be paid $2 or $3 per gallop. Appellant apparently felt that respondent would initially be working on a trial basis. Respondent assumed that she would be working for a period of sixty days, the galloping time necessary before the horses' training would begin. She did assume, however, that appellant would terminate her if he was at any time dissatisfied with her work.

On September 29, 1980, respondent met appellant at the farm to begin galloping the horses. Appellant provided the equipment which was to be used, and then indicated what he knew about each horse respondent was to ride and gave her instructions on the use of the reins, the tightness of the reins, and the distance to be covered. Respondent then galloped each horse while appellant observed. While respondent was attempting to take the third horse to the oval track where it was to be galloped, the horse became skittish and fell over on respondent. She was injured during this incident, and it is for these injuries that she claimed compensation.

## I.

■ We will first examine whether appellant's business was exempt from Workmen's Compensation Laws, under I.C. § 72–212(8), as an agricultural pursuit. An agricultural pursuit is specifically defined by the statute as "the raising or harvesting of any agricultural or horticultural commodity including the raising, pelting, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife raised in captivity, on inclosed lands and public ranges." Appellant is involved in the "raising, ... feeding, caring for, training and management of" horses, which have been defined by this Court as livestock.[1] While these activities arguably fall within the statutory definition of an "agricultural pursuit," our analysis does not end here.

In the recent case of *Lesperance v. Cooper*, 104 Idaho 792, 663 P.2d 1094 (1983), we summarized the principles that we have relied upon previously in determining whether an employer is engaged in an agricultural pursuit. We concluded that the trier of fact must look at the following factors: (1) "the general natuᵣe of the employer's business;" (2) "the traditional meaning of agriculture as the term is commonly understood;" and, (3) "that each business will be judged on its own unique characteristics." *Id.* at 794–95, 663 P.2d at 1096–97.

In *Lesperance*, we relied upon both the statutory definition of an agricultural pursuit, and the application of the three factors stated above, in reaching our decision that a cattle feed operation was an agricultural pursuit. *Id.* at 795, 663 P.2d at 1097. In conjunction with the statutory definition, we believe these three factors provide the

---

1. *Meader v. Unemployment Compensation Div.*, 64 Idaho 716, 722, 136 P.2d 984, 990 (1943) ("livestock" includes more common forms of domesticated animals, "such as cattle, sheep, hogs and horses").

necessary framework within which to completely analyze whether a specific business falls within the exemption.

In applying the first factor to the case at bar, we view the general nature of the employer's [appellant's] business to be both the sale and racing of thoroughbred horses. Indeed, appellant testified that approximately 50% of the farm revenue stemmed from winning races with his horses and the other 50% from the sale of horses. Thus, we cannot say that the "general nature" of appellant's business was *primarily* horse breeding. Rather, it appears that appellant's business was split equally between horse breeding and horse racing.

■ As to the second factor, the traditional meaning of agriculture may arguably include horse breeding, but, it can hardly include the training and racing of racehorses. We do not view horse racing as typical of an ordinary farmer, or in any way related to an agricultural purpose. *Manning v. Win Her Stables, Inc.*, 91 Idaho 549, 428 P.2d 55 (1967).

■ In examining the third factor, the unique characteristics of the appellant's business, it is apparent that appellant is involved in two business activities, horse breeding and horse racing. Even assuming that horse breeding is an exempt activity, we do not view horseracing as an exempt activity. Rather, horse racing is a covered occupation. We have stated that "where the employer is engaged in both a covered occupation and an exempt occupation, a special employee employed to work exclusively in the covered occupation is covered." *Hubble v. Perrault*, 78 Idaho 448, 453, 304 P.2d 1092, 1094–95 (1956), *quoted in Manning v. Win Her Stables, Inc.*, 91 Idaho 549, 553, 428 P.2d 55, 59 (1967); *see also Kuhn v. Box Canyon Livestock, Inc.*, 102 Idaho 658, 660, 637 P.2d 1154, 1156 (1981); *Goodson v. L.W. Hult Produce Co.*, 97 Idaho 264, 267, 543 P.2d 167, 170 (1975). Although horseracing may be related to horse breeding, it fairly can be said to constitute a separate enterprise. Be-

cause we have stated that horseracing is a covered occupation, respondent who was employed to work exclusively in this enterprise, is also covered for purposes of workmen's compensation.

If the Court undertook a strict interpretation of the statutory language of I.C. § 72–212(8), we could conclude the challenged activity would be exempt from Workmen's Compensation coverage. However, in view of the factors enunciated in *Lesperance*, which necessarily guide our analysis, and their application to the present case, we cannot support a decision to grant an exemption. Furthermore, a discussion of the agricultural pursuit exemption is necessarily predicated upon the policies and purposes of Workmen's Compensation law.

"This court repeatedly has recognized the policy that 'there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction.' ... A necessary corollary to the realization of the humane purposes and promotion of justice within the workmen's compensation scheme is that all exemptions from coverage, including the one for agricultural pursuits, be construed narrowly."

*Goodson, supra*, at 266, 543 P.2d at 169 (citations omitted). In accordance with these policies, we are persuaded to affirm the decision of the Industrial Commission in denying an agricultural pursuit exemption to the appellant herein.

It appears that the Industrial Commission relied entirely upon *Manning v. Win Her Stables, Inc.*, 91 Idaho 549, 428 P.2d 55 (1967), in reaching its decision to deny an exemption to appellant. While our holding therein is of assistance to us today, we do not rely solely upon *Manning* in reaching our decision. Although the *Manning* court acknowledged the legislature's definition of

an agricultural pursuit,[2] it appears that the court focused primarily upon the character of the claimant's specialized employment in reaching their decision. The *Manning* court stated that "only the character of respondent's [claimant's] specialized employment need be considered in determining whether he was engaged in an 'agricultural pursuit.' " *Id.* at 553, 428 P.2d at 59. We hold today that in order to reach a well-reasoned conclusion, the statutory language must be consulted in conjunction with the three factors set out in *Lesperance, supra.*

Nevertheless, our holding in *Manning* is conclusive as to a critical factor of the *Lesperance* framework—the traditional meaning of agriculture as the term is commonly understood. In *Manning,* we stated that the training of racehorses was "special work, not ordinarily done by farmers, that partook of a commercial character entirely separate and apart from an agricultural pursuit." 91 Idaho at 553, 428 P.2d at 59. Although it may be noted that the employer in the present case raised and trained his own horses exclusively, whereas the employer in *Manning* performed these services for others, a critical similarity exists between these cases. Both employers were involved in the same character of work—the care and training of racehorses, regardless of who owned them. Moreover, the *Manning* court did not specifically rely upon the fact that the employer therein was training horses for others in reaching its decision to deny the exemption. We rely in part upon the reasoning of *Manning* as discussed above. However, to the extent that *Manning* or earlier decisions of this Court are inconsistent with the views or approach as expressed herein, they are overruled.

## II.

Appellant further urges this Court to find that respondent was an independent contractor as defined by I.C. § 72–102(13),

and thus, exempt from Workmen's Compensation coverage.

 The Industrial Commission correctly identified the test to determine whether or not a claimant was an independent contractor as the "right to control" test. *See Ledesma v. Bergeson,* 99 Idaho 555, 585 P.2d 965 (1978); *Merrill v. Duffy Reed Construction Co.,* 82 Idaho 410, 353 P.2d 657 (1960); *Pinson v. Minidoka Highway Dist.,* 61 Idaho 731, 106 P.2d 1020 (1940). Furthermore, the question of whether a particular person is an employee or an independent contractor is a question of fact. *Larsen v. State,* 106 Idaho 382, 679 P.2d 659 (1984); *Taylor v. Blackwell Lumber Co.,* 37 Idaho 707, 218 P. 356 (1923). If the determinations of fact made by the Commission are supported by substantial competent evidence, those findings will not be disturbed on appeal. *Larsen v. State, supra; Ford v. Bonner County School Dist.,* 101 Idaho 320, 612 P.2d 557 (1980); *Sutherlin v. Grant,* 99 Idaho 864, 590 P.2d 1010 (1979). We have reviewed the record, and the decision of the Industrial Commission is supported by substantial and competent evidence, and thus, we must affirm the Commission on this issue.

## III.

 Lastly, appellant contends that I.C. § 72–212(2) provides an exemption from coverage under Workmen's Compensation to all individuals engaged in casual employment, such as the respondent herein. The Industrial Commission correctly stated that casual employment includes only that employment which "arises occasionally or incidentally or which comes at uncertain times or at irregular intervals." *Manning v. Win Her Stables, Inc.,* 91 Idaho 549, 554, 428 P.2d 55, 60 (1967) (quoting *Wachtler v. Calnon,* 90 Idaho 468, 471–72, 413 P.2d 449, 450 (1966)). On the issue of whether the employment in this case was casual, the Commission again determined the facts, and facts which are supported by substantial competent evidence, will not be

---

**2.** The definition of an agricultural pursuit was then codified at I.C. § 72–105A. This codification essentially contains the precise language we are construing today.

disturbed on appeal. *Larsen v. State, supra; Ford v. Bonner County School Dist., supra; Sutherlin v. Grant, supra.* We have reviewed the record, and the decision of the Industrial Commission is supported by substantial and competent evidence, and thus, we must affirm the Commission on this issue.

On the undisputed facts of this case, we conclude that appellant should be denied an exemption on any of the three theories herein discussed. The decision of the Industrial Commission is affirmed.

Costs on appeal to respondent.

No attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., concur.

BAKES, Justice, concurring and dissenting:

While I concur in Parts II and III of the majority opinion, I dissent from Part I which holds that the employer's business in this case is not an agricultural pursuit. The activity pursued by the employer falls precisely within the legislative definition of "agricultural pursuit," and that legislative determination should be followed.

I.C. § 72–212(8) exempts agricultural pursuits from coverage under the worker's compensation statutes, and specifically defines "agricultural pursuits" as the "raising or harvesting of any agricultural or horticultural commodity including the *raising*, pelting, shearing, *feeding, caring for, training and management of livestock* ...." (Emphasis supplied.) Appellant is involved in the "raising, ... feeding, caring for, training and management of" horses, which our prior cases have held to be within the definition of livestock, as the majority recognizes. The claimant's activity at the time of the accident was the "training" of a horse [livestock], which the legislature has expressly declared to be exempt. The commission's decision, even though it relied upon one of our prior decisions, and the decision of the majority are directly contrary to the statutory language, and thus the majority errs in its failure to reverse this decision.

In arriving at its decision, the commission specifically relied on our prior decision in *Manning v. Win Her Stables, Inc.*, 91 Idaho 549, 428 P.2d 55 (1967), as indeed it should have. In that case, this Court was called upon to determine whether a claimant hired to train and exercise racehorses at a race track owned by the employer was engaged in an agricultural pursuit. The factual circumstances in *Manning* are somewhat distinguishable from the factual circumstances in this case. In *Manning*, the employer, Win Her Stables, Inc., was a corporation which owned and operated a race track and stables. The track was used exclusively for training racehorses. The employer boarded and trained horses on consignment from other owners, although the corporation did keep some of its own horses at the track. In *Manning* the employer also leased out a portion of its premises to other owners and trainers.

In the present case the employer was an individual involved in raising and training his own horses on his own farm and he did not perform those services for others. That the employer is performing services on his own crops or livestock, rather than that of others, has been a factor considered by this Court in other cases. *Goodson v. L.W. Hult Produce Co.*, 97 Idaho 264, 543 P.2d 167 (1975) (potato grading activity conducted by a potato seed grower); *Backsen v. Blauser*, 95 Idaho 811, 520 P.2d 858 (1974) (contract hay hauler). *See also Lesperance v. Cooper*, 104 Idaho 792, 663 P.2d 1094 (1983).

The initial comment made by the Court in *Manning v. Win Her Stables, Inc., supra*, was in response to the employer's argument that his activities fell directly within the statutory definition of an agricultural pursuit, and thus were exempt. The Court responded, stating:

"Appellant contends that respondent was engaged in the 'caring for, training, and management of livestock' and therefore not covered by workmen's compensation provisions. Such reasoning is clearly erroneous since the employment of respondent must have been an included 'agricul-

tural pursuit' within the definition of I.C. § 72–105A(1), which we conclude it was not." *Id.* at 552, 428 P.2d at 58.

In making this statement the *Manning* Court obviously overlooked the statute because the "definition" of "agricultural pursuit" as included in then I.C. § 72–105A was "caring for, training, and management of livestock," the very activities which the employee was engaged in. The employment in that case fell *expressly* within that statutory definition.

The *Manning* Court did not directly address the statutory definition of "agricultural pursuit," but created its own definition of agricultural pursuit, which it described as "work ... ordinarily done by farmers." The Court in *Manning* then held that the training of horses was "special work", "commercial [in] character," and was "entirely separate and apart from" "work ... ordinarily done by farmers," and therefore was not an agricultural pursuit. That definition ignores the statute. The majority continues that error today by relying on that part of the *Manning* definition.

The majority cites our recent decision in *Lesperance v. Cooper*, 104 Idaho 792, 663 P.2d 1094 (1983), in support of its argument that the employer here was not engaged in an agricultural pursuit. It is difficult to understand the majority's reliance upon that case in view of the fact that the Court in *Lesperance* concluded that the activity there, the spraying of ditches to reduce weeds, was exempt because it fell "directly within the language of the exemption itself" which "plainly exempts agricultural pursuits which includes 'the raising, pelting, shearing, feeding, caring for, training and management of livestock'." The claimant in that case had argued that:

"[R]espondent offers a limited and specialized service. He argues that excessive specialization or commercialization by a farmer should cause that farmer to lose the advantage of the agricultural exemption. He argues that the fact that respondent charges third parties on a per head, per day basis militates in favor of

denying the agricultural exemption because the purpose of the exemption is to allow protection to farmers who cannot recover all their costs. He argues that since respondent does not own all of the cattle he feeds, he cannot take advantage of the exemption. He also argues that he was 'special' to the operation of the business, and thus he himself should not be thought of as being engaged in an agricultural pursuit." 104 Idaho at 795, 663 P.2d at 1097.

In response to that argument, the Court discussed several principles which had developed from earlier cases where the activity was arguably exempt, but not specifically within the wording of the statute. Nevertheless the linchpin of the decision in *Lesperance* was that "[a]pplication of the general principles noted in previous Idaho cases, *and the statutory exemption itself,* to the facts of the present case leads us to the conclusion that the commission did not err in finding respondent's business to be an agricultural pursuit." 104 Idaho at 795, 663 P.2d at 1097. In *Lesperance* the particular activity involved there, spraying of ditches, was not specifically set out as exempt in the statute, but was only exempt to the extent that it related either to "the raising or harvesting of any agricultural or horticultural commodity" or "the raising, pelting, shearing, feeding, caring for, training and management of livestock." However, the activity in this case, the training of a horse, is specifically and precisely defined as an exempt activity under the statute. Accordingly, the opinion in *Lesperance,* which held the activities there to be exempt, is authority for the proposition that the activity here, which is precisely within the definition of agricultural pursuit as defined in the statute, is also exempt.

The legislature is the policymaking body that determines which employment shall be covered by worker's compensation and which shall not. There will always be certain agricultural activities which are questionable as to whether they fall within the statutory definition of agricultural pursuit, such as the line dividing the exempt activities of raising or harvesting of any agricul-

tural or horticultural commodity, from non-exempt agricultural marketing or manufacturing. However, when an activity such as that engaged in by appellant here, the raising and training of horses, falls precisely within the statutory definition of "agricultural pursuit" all of the rules of statutory construction, and the nuances which have developed around the distinction between the raising of crops and the manufacturing or marketing of those crops, should not cloud that portion of the statutory definition of agricultural pursuit which clearly covers the raising and training of livestock. Accordingly, on the undisputed facts of this case respondent's employment with appellant, the training of respondent's horses by galloping them, was in an "agricultural pursuit" as defined by the legislature, *i.e.*, the raising and training of livestock, and therefore should be exempt from the workmen's compensation laws.

That is not to say that the claimant has no remedy for her injuries. Being exempt from the workmen's compensation laws would mean that the claimant would have the full range of remedies provided for in the tort law of this state. *See Summers v. Western Idaho Potato Processing Co.,* 94 Idaho 1, 2, n. 1, 479 P.2d 292 (1970); *Gifford v. Nottingham,* 68 Idaho 330, 193 P.2d 831 (1948). However, the conduct involved here falls specifically within the definition of an "agricultural pursuit," and thus is exempt from the workmen's compensation laws.

SHEPARD, J., concurs.